The defendants in an action pending in the Jefferson Circuit Court, AmSouth Bancorporation and certain of its affiliates, petition this Court for a writ of mandamus directing the trial court to set aside its order certifying the action as a class action under Rule 23(b)(3), Ala. R. Civ. P. We grant the petition.
The defendant AmSouth Bank of Alabama ("the Bank") is a wholly owned subsidiary of the defendant AmSouth Bancorporation. The defendant AmSouth Investment Services, Inc. ("AIS"), is, in turn, a wholly owned subsidiary of the Bank. AIS brokers sell a variety of investments, such as mutual funds, interests in unit investment trusts, and corporate securities and bonds that are not insured by the Federal Deposit Insurance Corporation ("FDIC") or otherwise guaranteed against loss of principal. The original plaintiff in this action, James W. Kerr, is a depositor of the Bank who purchased, through AIS, non-FDIC-insured securities that he alleges lost value. On April 16, 1996, Kerr filed a class-action complaint asserting that he and others similarly situated had been victimized by a systematic, management-directed policy of deception and fraud engaged in by the defendants. Kerr maintained that the defendants had conspired to implement a fraudulent scheme targeting customers of the Bank for high-pressure sales pitches aiming to induce them to switch their money from FDIC-insured investments with the Bank, such as savings and checking accounts and certificates of deposit ("CDs"), to uninsured, and therefore riskier, securities sold by AIS. The complaint charges that the defendants utilized "uniform sales practices which included misleading statements and omissions" in order to induce purchases of uninsured securities, which produce greater revenue for the defendants than guaranteed Bank deposits. More specifically, the complaint alleges that the defendants (1) exploited the trust depositors placed in the Bank, by sharing confidential information regarding Bank depositors and their accounts; (2) misled investors by stating or implying that AIS and the Bank were one and the same and that AIS brokers were actually employees of the Bank itself; (3) marketed uninsured securities sold by AIS as being equally safe alternatives to, and yielding higher rates of return than, the Bank's FDIC-insured investments; and (4) failed to disclose that the securities sold by AIS included costs such as sales charges, administrative fees, and penalties for early withdrawal.
Based upon these factual allegations, the claims stated in Kerr's class complaint can be separated into the following categories: (1) securities fraud claims based on §§ 8-6-17 and8-6-19, Ala. Code 1975, parts of the Alabama Securities Act; (2) "standard" fraud claims alleging misrepresentation, suppression, and deceit, based on §§ 6-5-100 through 6-5-104, Ala. Code 1975; (3) negligent and wanton supervision; (4) breach of implied contract; (5) breach of fiduciary duties; and (6) invasion of privacy.
After Kerr filed his class complaint, Jennifer L. Donaldson and Maggie E. Petty, both of whom had also purchased securities through AIS, were joined as plaintiffs. The plaintiffs moved to have the trial court certify a class of all depositors of the Bank who had purchased non-FDIC-insured securities from the defendants between January 1992 and February 1996. The defendants responded by moving to dismiss the claims of the three named plaintiffs. Before determining whether a class should be certified, the trial court held a hearing on the defendants' motion to dismiss, treating it as a motion for summary judgment. On February 10, 1997, the trial court entered summary judgments in the defendants' favor on all claims of Kerr and Donaldson,[1] but denied a summary judgment as to Petty's claims. *Page 360 
On March 21, 1997, the trial court held a hearing on the motion for class certification under Rule 23, Ala. R. Civ. P.[2] At this hearing, Petty introduced her affidavit, which described her dealings with AIS after she had sought to invest $160,000 she had inherited. The 67-year-old Petty, a customer of the Bank since the 1960s, alleged that in January 1992 she advised a trusted officer at her local Bank branch that she was interested in investing her inheritance in "something that was paying more than CDs, but was guaranteed like CDs." She alleged that the officer suggested she speak with the "Bank's investment department" and referred her to Sheila Smith, an AIS broker who worked in the AmSouth building in downtown Mobile. Petty, who stated that she was uneducated about investments and had never put her money in anything but FDIC-insured accounts, reiterated to Smith that she wanted a guaranteed investment like a CD. Petty said Smith said she understood Petty wanted a guaranteed return and recommended that she invest in the "U.S. Government Income Fund." Petty invested in the fund, believing that her investment principal was Government-insured against loss. In actuality, though, the value of her principal was subject to fluctuation and was not guaranteed. Petty claims that she was unaware of this risk until she received a telephone call from Smith in December 1994, at which time she learned that her principal had lost value. Upset that her investment was not guaranteed, Petty withdrew her funds; she sustained a loss on her principal of approximately $17,000.[3]
Petty also attempted at the hearing to show similar malfeasance by the defendants against other class members generally. She offered affidavits of three former AIS brokers, who testified that the Bank had routinely shared information on Bank depositors so that AIS might target them as potential securities investors. These brokers also stated that they had been admonished by their superiors when they complained that the incentive structure developed by AIS management greatly overstressed sales of AmSouth-managed mutual funds, for which AmSouth received administration fees. This emphasis, the brokers charged, pressured brokers to choose sometimes between their personal interest in commissions and recommending *Page 361 
investments that the brokers truly believed were most appropriate for a customer's needs.
Petty also introduced testimony from Vicki Kidder, who had served AIS as a consultant and later as one of its vice presidents for five months in 1992. Kidder recounted how she received rebukes from her superiors at AIS when she complained that brokers routinely breached company procedures and applicable securities regulations, primarily by failing to have customers complete new account application documents at all or by having such documents "backdated" after trades had already been made for customers.
Finally, Petty presented documentation indicating that AIS had been the subject of disciplinary action by regulatory agencies for certain of its practices. First, she offered a certificate issued by the Alabama Securities Commission ordering AIS to show cause why its registration and that of one of its brokers should not be suspended or revoked. This document listed the accusations of seven persons who had allegedly sought investments without risk to principal and who complained that one AIS broker had deceived them into purchasing nonguaranteed securities. Second, she introduced a consent judgment that was based upon an agreement entered into between AIS and the National Association of Securities Dealers in July 1996. Under that judgment, AIS was to pay a $150,000 fine for various violations of regulations, primarily regarding matters similar to those previously described: improper account documentation and record keeping, misleading statements by the AIS broker who was the subject of the "show cause" order from the Alabama Securities Commission, AIS's inadequate supervision of that broker, and improper payment of commissions to unlicensed employees of AIS's affiliate Bank.
On April 14, 1997, the trial court issued an order finding that the plaintiff Petty had presented evidence satisfying all the requirements of Rule 23(a) and (b)(3), Ala. R. Civ. P. Based on the plaintiff's evidence presented at the certification hearing, the trial court found that the class had an "overriding common interest" in litigating the "core liability issue of this case," which the court interpreted as being whether there existed "a centrally orchestrated, management-led scheme to deceive Bank customers into purchasing risky securities through, among other means, the use of substantially similar oral misrepresentations and omissions." Relying upon this Court's decision in Harbor Ins. Co. v.Blackwelder, 554 So.2d 329 (Ala. 1989), the trial court concluded that the plaintiff had alleged fraud claims "with a common thread" and, therefore, it reasoned that the claims were maintainable as a class action. The trial court granted the motion for certification, in order to hold an initial trial to resolve on a class-wide basis the single issue whether the defendants had engaged in such a management-led common scheme.
The trial court defined the class as follows: "All persons who were deposit customers of any AmSouth branch located in Alabama who, beginning on January 2, 1992, and up through February 1, 1996, purchased securities or other non-FDIC-insured products from AmSouth Investment Services and were damaged thereby."[4] The trial court appointed Petty as class representative and her attorneys as class counsel. The defendants now seek a writ of mandamus directing the trial court to set aside its certification order.
A petition for a writ of mandamus is the proper means for reviewing an order certifying a case as a class action. Exparte Gold Kist, Inc., 646 So.2d 1339, 1340 (Ala. 1994); Exparte Blue Cross Blue Shield of Alabama, 582 So.2d 469 (Ala. 1991). The well-established and often repeated standard of review applicable in this context, which is set forth in Exparte Holland, 692 So.2d 811, 814 (Ala. 1997), provides:
 "First, a writ of mandamus, which is a drastic and extraordinary remedy, is appropriate only when the one seeking it has shown a clear legal right to the order sought; an imperative duty on the respondent to perform, accompanied by a refusal to do so; the lack of another adequate *Page 362 
remedy; and properly invoked jurisdiction of the court. Ex parte Johnson, 638 So.2d 772 (Ala. 1994). Second, an order certifying an action as a class action is generally not disturbed by this Court in the absence of an abuse of discretion on the part of the trial judge. Ex parte Gold Kist, Inc., 646 So.2d 1339 (Ala. 1994)."
See Rule 21, Ala. R.App. P.; Ex parte State ex rel. McKinney,575 So.2d 1024 (Ala. 1990); Ex parte Green Tree FinancialCorp., 684 So.2d 1302, 1305 (Ala. 1996).
"In order to obtain class certification, the plaintiff must establish all of the criteria set forth in Rule 23(a) and one of the criteria set forth in Rule 23(b)." Ex parte Gold Kist, supra, at 1341 (citations omitted). Before certifying a class action, the trial court must conduct a " 'rigorous analysis' " to determine whether the proponent of certification has met his burden of showing that the prerequisites of Rule 23 are satisfied. Ex parte Citicorp Acceptance Co., 715 So.2d 199, 203
(Ala. 1997), quoting General Tel. Co. of the Southwest v.Falcon, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740
(1982).[5] This Court explained in Ex parte Green Tree, supra, as follows:
 "[T]he one against whom certification has been entered has a clear legal right to a writ directing that the class action certification be set aside if the party seeking class action certification failed to carry the burden of producing sufficient evidence to satisfy the requirements of Rule 23 — in the event of such a failure, the trial court's certification of the action as a class action constitutes an abuse of discretion."
684 So.2d at 1307.
The defendants argue that the trial court abused its discretion in certifying the class because, they argue, the plaintiff failed to meet her burden of showing "that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy," as required by Rule 23(b)(3). More specifically, the defendants contend that a class action would be unmanageable because, they say, the evidence before the trial court shows that there were materially different written and oral representations by hundreds of employees of the Bank and AIS during conversations with Petty and potentially thousands of other class members; the defendants say this fact would require that each member of the class be individually questioned regarding the substance of what was communicated to the member.
Petty counters by arguing that the trial court correctly found that "the core liability issue in this case" was whether the defendants had engaged in a management-led scheme to deceive Bank customers into believing that the uninsured securities they were purchasing from AIS were without risk to principal and that this "principal and overriding issue" can profitably be tried in a single adjudication. Petty contends that it would not be necessary to question each of the class members because, she says, the existence of the common scheme would be proven, if at all, through written documents that would come from the defendants' files, outlining their policies and practices, as to which the members of the plaintiff class would all be similarly situated.
Rule 23(b)(3) furnishes a means of disposing of similar disputes efficiently and economically, for the convenience of the parties and the courts, Sterling v. Velsicol Chem. Corp.,855 F.2d 1188 (6th Cir. 1988); see also Nichols v. Mobile Bd.of Realtors, Inc., 675 F.2d 671 (5th Cir. 1982). As with the other prerequisites of Rule 23, "[t]he unique facts of each case will generally be the determining factor governing certification [under subsection (b)(3)]." Alabama v. Blue BirdBody Co., 573 F.2d 309, 316 (5th Cir. 1978). When considering whether the *Page 363 
facts and circumstances of a potential class action satisfy the "predominance" and "superiority" criteria of subsection (b)(3), the trial court "must go beyond the skeleton of 23(a) [requirements of numerosity, commonality, typicality, and adequacy of representation], in order to be certain of the existence of a group which is more bound together by a mutual interest in the settlement of common questions than it is divided by the individual members' interest in matters peculiar to them." 3B James Wm. Moore et al., Moore's Federal Practice ¶ 23.45[2] p. 23-299 (2d ed. 1985). Thus, while deciding the certification question may not require a court to look behind the pleadings in every case,[6] a trial court may need to do so in order to examine the nature of the claims and defenses, the relevant facts, and the substantive law, in order to make a meaningful determination of the certification issues. See Exparte Equity Nat'l Life Ins. Co., 715 So.2d 192 (Ala. 1997);Castano v. American Tobacco Co., 84 F.3d 734, 744 (5th Cir. 1996).
It is well established in the federal courts that, although a fraud committed upon numerous persons may have some common core, it may be nonetheless unsuitable for class treatment under Rule 23(b)(3) where there were material variations in the representations allegedly relied upon by the potential class members. See Advisory Committee's Note to Rule 23(b)(3), Fed.R.Civ.P., 39 F.R.D. 98, 103 (1966); Darms v. McCulloch OilCorp., 720 F.2d 490 (8th Cir. 1983); Clark v. Watchie,513 F.2d 994 (9th Cir.), cert. den., 423 U.S. 841, 96 S.Ct. 72,46 L.Ed.2d 60 (1975); Simon v. Merrill Lynch, Pierce, Fenner Smith, 482 F.2d 880 (5th Cir. 1973). Accord Butler v.Audio/Video Affiliates, Inc., 611 So.2d 330, 332 (Ala. 1992) (holding that it was not an abuse of discretion to deny certification of a consumer-fraud class action under Rule 23(b)(3) where the trial court reasonably found, among other things, that "any representations made to alleged members of the . . . class were oral and varied from person to person"). Indeed, "the key concept in determining the propriety of class action treatment [as to fraud claims] is the existence or nonexistence of material variations in the alleged misrepresentations." Grainger v. State Sec. Life Ins. Co.,547 F.2d 303, 307 (5th Cir. 1977).
In deciding to certify the class, the trial court expressly excluded any consideration of whether the defendants had made representations to the class members materially similar to those made to the named plaintiff. Of course, a class representative can recover for a fraud perpetrated upon her individually, whether or not materially similar false or misleading representations were made to other members of the class. But unless the plaintiff in a putative class action can establish that similar false or misleading representations were made to other class members, the action may not proceed as a class action under Rule 23(b)(3). Darms, Clark, Simon,Grainger, Butler, supra. As these cases indicate, a putative class plaintiff must establish, and the trial court must affirmatively determine, that the defendants made materially similar representations to the class.
Without examining the substance of the defendants' alleged representations to the class, the trial court certified the class in anticipation of a trial on the single issue of whether "the defendants engaged in a centrally orchestrated, management-led scheme to deceive Bank customers into purchasing uninsured securities." The trial court described this as the "core issue" in the case, as to liability, and concluded that resolution of that issue on a class basis would significantly advance the litigation.
"A single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual questions." Herbert Newberg 
Alba Conte, Newberg on Class Actions, § 4.25 at 4-84 (3d. ed. 1992); see also Ex *Page 364 parte Masonite Corp., 681 So.2d 1068, 1075 (Ala. 1996) (holding that the trial court did not abuse its discretion in certifying a class under Rule 23(b)(3) in order to conduct an initial trial on the single issue of whether the defendants' exterior siding was defective); Advisory Committee's Note to Rule23(c)(4), Fed.R.Civ.P. ("in a fraud or similar case the action may retain its 'class' character only through the adjudication of liability to the class; the members may thereafter be required to come in individually and prove the amounts of their respective claims").
The defendants in this case are alleged to have systematically engaged in a scheme to deceive Bank customers so as to induce them to take money out of FDIC-insured deposits and invest it in less secure securities, by falsely representing that the new investments were as safe as, or safer than, the insured deposits. If that alleged scheme is proved to be true, i.e., if it is shown that the defendants engaged in a scheme to defraud the Bank's customers, a customer might recover in an action alleging fraud (whether under § 6-5-100
through -104 or under § 8-6-17 and -19 of the securities laws). But in order to maintain a fraud action on behalf of all customers who were similarly defrauded by the defendants, the plaintiff must show that the misrepresentations made to the members of the class were materially similar to the misrepresentation made to her.[7]
The plaintiff alleges in this case, and she may be able to prove, that the defendants' policies caused hundreds of AIS customers to be misled as to the risks associated with their investments. However, the record shows that AIS employs more than 70 brokers, who operate out of about 250 locations and serve more than 50,000 customers. In order to proceed on behalf of the class of customers who invested in the AIS securities, the plaintiff, under Rule 23(b)(3), must also show that questions common to the class predominate over questions affecting only individual members and that a class action is superior to other available methods for resolving the controversy. In this case, which concerns oral statements allegedly made by the defendants concerning the risks associated with the securities, the plaintiff must show that the statements, i.e., the misrepresentations of fact, were common to the class. Stated differently, to proceed on behalf of a class consisting of all Bank customers who invested in the securities offered by AIS, the plaintiff must show that the members of the class received materially similar representations before investing in the securities.[8] *Page 365 
The plaintiff's fraud claim rests upon oral statements allegedly made by the defendants to induce her to invest in securities offered by AIS. It does not involve documents containing false representations or omissions of material facts; questions of fraud based on documents are more typically suited for class-action determination. Instead, like the plaintiff's individual claim, the class fraud claims revolve around oral representations made in connection with each transaction with each customer.[9] Although it may be true, as the plaintiff alleges, that all representations made in connection with the sale of the securities omitted or contradicted written information Kerr, Donaldson, and Petty received,[10] it does not necessarily follow that all representations made to make the sales were materially similar to those allegedly relied upon by Petty.
In certifying the fraud claims as a class action, the trial court relied heavily upon this Court's decision in Harbor Ins.Co. v. Blackwelder, supra. The facts of that case, however, are materially different. There, the class was composed of persons who had purchased an underfunded employee insurance plan, relying upon materially similar misrepresentations made by the defendant's agent, who omitted in his various sales presentations the material fact that the plan was underfunded. In response to the insurer's claim that the plaintiffs had failed to establish the commonality and typicality requirements of Rule 23, the Court stated:
 "Although the misrepresentations were made to the members of each class at varying times, the misrepresentations were basically the same and were redressable under the same theory of recovery. Where plaintiffs allege and prove a standard claim for fraud based on misrepresentations with a common thread, as is the case here, their cause is maintainable as a class action."
554 So.2d at 335.
The trial court was also persuaded by the court's holding inIn re American Continental Corp./Lincoln Savings LoanSecurities Litigation, 140 F.R.D. 425 (D.Ariz. 1992) (hereinafter "ACC/Lincoln"). There, however, the federal district court affirmatively found that, "[a]lthough the representations made to the bond purchasers in this case were not identical, they were sufficiently uniform to warrant class treatment." 140 F.R.D. at 430.[11] Further, in that case, *Page 366 
the court also found that the doctrines of "fraud in the offering" and "fraud on the regulatory process" were applicable to the fraud allegations. The "fraud in the offering" theory is based upon the principle that " 'securities laws allow an investor to rely on the integrity of the market to the extent that the securities it offers to him for purchase are entitled to be in the marketplace.' " 140 F.R.D. at 432, quotingShores v. Sklar, 647 F.2d 462, 471 (5th Cir. 1981), cert. den.,459 U.S. 1102, 103 S.Ct. 722, 74 L.Ed.2d 949 (1983). See alsoBasic v. Levinson, 485 U.S. 224, 241-49, 108 S.Ct. 978,99 L.Ed.2d 194 (1988) (approving of the related "fraud on the market" theory in securities fraud cases). The "fraud on the regulatory process" theory similarly recognizes that " 'the purchaser of an original issue security relies, at least indirectly, on the integrity of the regulatory process and the truth of any representations made to the appropriate agencies and the investors at the time of the original issue.' "140 F.R.D. at 433, quoting Arthur Young Co. v. United StatesDistrict Court, 549 F.2d 686, 695 (9th Cir.), cert. den.,434 U.S. 829, 98 S.Ct. 109, 54 L.Ed.2d 88 (1977). Cases where the "fraud in the offering" or "fraud on the regulatory process" theory is applicable may be "especially suited for class action treatment, as it makes virtually irrelevant the possibility that the various purchasers may have relied on different representations regarding the desirability of the particular securities in question." Kirkpatrick v. J.C. Bradford Co.,827 F.2d 718, 723 (11th Cir. 1987). In the present case, however, the plaintiff has alleged that the defendants made false representations directly to class members, rather than to the market or to regulators; therefore, the "fraud in the offering" and "fraud on the regulatory process" theories are not applicable.
A plaintiff seeking to represent a class need not prove the entire case in order to meet the prerequisites of Rule 23, and a trial court may often certify a class prior to discovery, or at least prior to the completion of discovery, as in the instant case. Of course, it is equally true that an action is not maintainable as a class action merely because it is designated as such in the pleadings. Belcher v. BassettFurniture Industries, Inc., 588 F.2d 904 (4th Cir. 1978). An order certifying a class action is conditional in that it may be altered or amended before the decision on the merits. Rule 23(c)(1), Ala. R. Civ. P.; see also Ex parte First Nat'l Bankof Jasper, 717 So.2d 342 (Ala. 1997); Ex parte CiticorpAcceptance Corp., supra. A primary " 'purpose of conditional certification is to preserve the Court's power to revoke certification in those cases wherein the magnitude or complexity of litigation' becomes apparent." Ex parte CiticorpAcceptance Co., supra, at 203 n. 7, quoting In re Hotel Tel.Charges, 500 F.2d 86, 90 (9th Cir. 1974); see also Evans v.U.S. Pipe Foundry Co., 696 F.2d 925 (11th Cir. 1983). "Thus, even in affirmative certification cases, the express caveat that the grant of class status may be rescinded, should further inquiry disclose its impropriety, has become a traditional feature of the initial grant of class treatment in securities fraud suits." 3B James Wm. Moore et al., Moore's FederalPractice ¶ 23.46[1] n. 72 (2d ed. 1985) (citations omitted).
An allegation of a fraudulent scheme employing uniform deceptive representations may sometimes be sufficient to support an initial certification of fraud claims as a class action. See, e.g., In re Badger Mountain Irr. Dist. SecuritiesLit., 143 F.R.D. 693 (W.D.Wash. 1992); Lubin v. Sybedon Corp.,688 F. Supp. 1425 (S.D.Cal. 1988); see also Kirkpatrick, supra. In the present case, however, the evidence that was before the trial court when it entered the certification order failed to establish that the oral representations made in connection with the sale of the securities by AIS were sufficiently similar or established a common thread that would permit the maintenance of the fraud claims as a class action.
Because of material variation in the representations to class members, the fraud claims are unsuited to class resolution. However, our holding that the fraud claims should not have been certified because of the existence of material variation in the alleged misrepresentations does not necessarily compel the conclusion that the plaintiff's remaining claims are also unsuitable for class treatment. Rather, the trial court should consider *Page 367 
separately the appropriateness of class action treatment of distinct claims. Cf. Kirkpatrick, supra, at 726 (holding that the trial court erred in failing to consider separately the appropriateness of class treatment of fraud claims brought pursuant to §§ 11 and 12(2) of the Securities Act of 1933, which were distinct from the plaintiff's fraud claims brought under § 10(b) of the Securities Exchange Act of 1934).
Because the plaintiff has not shown that materially similar misrepresentations of fact were made to substantially all of the Bank customers who constitute the putative class, the trial court abused its discretion in holding, based on the evidence offered so far, that the fraud claims could proceed as a class action under Rule 23(b)(3), Ala. R. Civ. P. Accordingly, we grant the defendants' petition for a writ of mandamus; the trial court is directed to set aside its order certifying the class.
WRIT GRANTED.
SHORES, KENNEDY, and COOK, JJ., concur.
HOOPER, C.J., and MADDOX, ALMON, HOUSTON, and SEE, JJ., concur in the result.
[1] The trial court did not explain its reasons for entering the summary judgments against Kerr and Donaldson. However, the defendants had argued that Kerr was not injured because he had received a greater return on his AIS securities than he would have received if he had invested in a 3-month or 12-month CD offered by the Bank. The defendants also pointed out that in his deposition Kerr acknowledged that he knew that the securities in which he had invested were neither FDIC-insured nor otherwise guaranteed, and that no one at AIS had told him differently. The defendants contended that Donaldson had not suffered any injury, because she sold the investments she had purchased from AIS at a substantial profit. The trial court certified the summary judgments against Kerr and Donaldson as final, pursuant to Rule 54(b), Ala. R. Civ. P. However, the propriety of those summary judgments is not a question now before us.
[2] Rule 23 provides in pertinent part:
 "(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
 "(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
". . . .
 "(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) The interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."
[3] The defendants point out that Petty had received $26,580.24 in cash dividends between January 1992, when she invested in the fund, and December 1994, when she withdrew. Thus, in total, Petty made approximately $10,000 profit on her $160,000 initial investment. However, even according to the calculations of the defendants' experts, Petty would have earned a greater yield on 3-month or 12-month CDs offered by the Bank.
[4] Excluded from the class were "the Defendants and their officers, employees, agents, affiliates and subsidiaries, any entity controlled by any Defendant, or the legal representatives, heirs, successors and/or assigns of any excluded person."
[5] This Court has previously recognized that Rule 23, Ala. R. Civ. P., is virtually identical to the corresponding federal rule. Marshall Durbin Co. v. Jasper Utilities Bd. of the Cityof Jasper, 437 So.2d 1014, 1025 (Ala. 1983); First BaptistChurch v. Citronelle-Mobile Gathering, Inc., 409 So.2d 727, 729
(Ala. 1981). Thus, when interpreting Rule 23 of the Alabama Rules of Civil Procedure, this Court has traditionally looked to federal cases construing Rule 23, Fed.R.Civ.P., as persuasive authority. See, e.g., Rowan v. First Bank of Boaz,476 So.2d 44 (Ala. 1985).
[6] See General Telephone Co. of the Southwest v. Falcon, supra,457 U.S. at 160, 102 S.Ct. 2364 ("Sometimes the issues are plain enough from the pleadings . . ., and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question"); see also Exparte First Nat'l Bank of Jasper, 717 So.2d 342, 346 (Ala. 1997) (plurality opinion) ("Falcon does not hold, nor do we, that a precertification evidentiary hearing is required in every case — or even in most cases").
[7] See, e.g., Booker v. United American Ins. Co., 700 So.2d 1333,1338 (Ala. 1997) ("In order to succeed on a fraud claim, the plaintiff must show . . . that the defendant misrepresented a material fact . . . [or][t]he plaintiff may show . . . the defendant's failure to disclose, or suppression of, a material fact"); Grant v. Winstead, 476 So.2d 36, 40 (Ala. 1985) (holding that securities fraud under § 8-6-17, Ala. Code 1975, "requires a fraud, an untrue statement of a material fact, or a failure to state a material fact necessary to prevent misleading"); Banton v. Hackney, 557 So.2d 807, 826 (Ala. 1989), citing Hill York Corp. v. American Int'l Franchises,Inc., 448 F.2d 680 (5th Cir. 1971) (in order to recover for securities fraud pursuant to § 8-6-19, Ala. Code 1975, "plaintiff need only prove that [the] defendant offered or sold securities . . . with misrepresentations or omissions of material facts").
[8] It is true that the existence and scope of a pattern or practice of similar fraudulent conduct by the defendants may indeed be an issue common to all class members, and a determination of that issue would be relevant to the defendants' intent and therefore could also impact upon the issue of punitive damages. See Foremost Ins. Co. v. Parham,693 So.2d 409, 427-29 (Ala. 1997); Ex parte Georgia Cas. SuretyCo., 531 So.2d 838, 838 (Ala. 1988); see also BMW of NorthAmerica v. Gore, 517 U.S. 559, 577, 116 S.Ct. 1589,134 L.Ed.2d 809 (1996) ("repeated misconduct is more reprehensible than an individual instance of malfeasance"). But it does not necessarily follow that the question of the existence of a broader scheme in general predominates over individual issues and renders a class action a superior method of resolving the controversy in this case. The simple fact that issues may be common to the class does not automatically imply that they are also significant to the efficient resolution of the case. SeeCastano v. American Tobacco Co., 84 F.3d 734, 745 (5th Cir. 1996) (holding that the trial court's "predominance" analysis in that case was flawed because it "just assumed that because the common issues would play a part in every trial, they must be significant"). If the defendants in this case did engage in a pattern or practice of conduct whereby they made misleading representations to numerous customers, but made them on less than a class-wide basis, that fact might be shown in individual trials.
[9] It has been noted that "courts usually hold that an action based substantially . . . on oral rather than written representations cannot be maintained as a class action." Simon, supra, 482 F.2d at 882. The Grainger court similarly stated, "It is possible, although unlikely, that oral misrepresentations can be uniform, e.g., though use of a standardized sales pitch by all the company's salesmen." 547 F.2d at 307. However, it is clear that oral representations that are materially similar as to the class may be the basis for a fraud class action in Alabama. See, e.g., HarborInsurance, cited above and discussed later.
[10] Petty and Donaldson each signed a document stating. "You understand that the value of your Securities is not insured by the Federal Deposit Insurance Corporation." Petty also admitted in her deposition that after investing she received in the mail numerous annual statements, newsletters, prospectuses, and other documents disclosing that her investment was not insured or otherwise guaranteed against loss of principal. Further, the evidence shows that the three original plaintiffs did not all sign the same new-account application document. Kerr, the original named plaintiff, signed a different and substantially more revealing document that, beginning in September 1993, replaced the earlier document form that had been signed by Petty and Donaldson. By signing the document, Kerr acknowledged (1) that he had "received a prospectus which explains all aspects of [his] investment" and that he understood (2) that his investment was "being made through AmSouth Investment Services, Inc. ('AIS'), a registered broker/dealer"; (3) that his investments purchased through AIS were "not deposits or obligations of, or guaranteed or endorsed by AmSouth Bank or any of its affiliates," nor "federally insured by the Federal Deposit Insurance Corporation or any other agency"; (4) that his investment was "in mutual funds that are advised by AmSouth Bank and that AmSouth Bank receives an advisory fee"; and (5) that "the principal value of [his] investment may be higher or lower in the future" and was "not guaranteed."
[11] We note that this analysis by the federal district court inACC/Lincoln, often cited by the plaintiff as persuasive authority, further demonstrates that a trial court should make a determination at the certification stage that the evidence supports a finding that materially similar representations were made on a class-wide basis, and that such a determination does not imply an improper examination of the merits of the case.