[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 282 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 283 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 284 
University Federal Credit Union ("UFCU") appeals from the certification of a class in an action brought by the plaintiff, Madalene Grayson. We vacate the class-certification order and remand.
 Facts and Procedural History
Grayson is an employee of the University of Alabama at Birmingham, where she works as an administrative associate in the biology department. Grayson is also a member of UFCU and has maintained various accounts with UFCU since 1985.
Among other things, UFCU offers its members loans for the purchase of automobiles. Since 1984, UFCU has required, in connection with "direct" automobile loans, a one-time charge of $2.50.[1] This charge was used to cover internal administrative expenses incurred in maintaining the borrower's file and in ensuring the vehicle's title was correct. Before 1993, this charge was disclosed on the promissory notes evidencing the loans as a "prepaid finance charge." Subsequently, UFCU changed the form of the promissory note and denoted the $2.50 charge as a "filing fee." The promissory note did not explain the nature of this charge. Grayson obtained automobile loans from UFCU in 1990, 1992, 1993, and 1998. With each loan, Grayson paid the $2.50 charge.
UFCU also allows its members to pay their automobile loan in monthly payments that are deducted automatically from their UFCU account. One such plan, used by Grayson, allowed individual members to make deposits into their accounts through automatic deductions from the member's biweekly paycheck. At the end of the month, the monthly loan payment was then deducted from the member's account.
On March 30, 2001, Grayson sued UFCU seeking certification of her action as a class action under Rule 23, Ala.R.Civ.P., and asserting numerous claims: breach of contract, breach of fiduciary duty, fraud, malicious conversion, deceit, deceptive trade practices,[2] and *Page 285 
negligence/negligent supervision. Specifically, the complaint alleged that UFCU wrongfully charged Grayson and other members of the credit union the $2.50 fee because, the complaint alleged, the fee was not used to file anything. Additionally, Grayson alleged that UFCU's method of deducting automobile loan payments from members' accounts was improper. Grayson thus sought certification of two different classes: one made up of UFCU members who had paid the $2.50 charge, and the other made up of customers enrolled in the biweekly payroll-deduction plan.
On December 14, 2001, the trial court conducted a class-certification hearing. At the hearing, the trial court heard testimony from Grayson and UFCU's vice president, Glenn Bryan. The trial court also received into evidence numerous exhibits, the affidavits of six other UFCU members, and the deposition testimony of both Bryan and Grayson.
On August 27, 2002, the trial court issued its class-certification order. Although the trial court denied certification for Grayson's payroll-deduction class, it did certify the following Rule 23(b)(3) class: "Those members [of UFCU] who have made automobile loans with the defendant and who were charged, in connection with those loans, a $2.50 filing fee."[3]
UFCU appeals.
 Discussion I.
In order to obtain class certification, Grayson must establish all of the criteria set forth in Rule 23(a) and at least one of the criteria set forth in Rule 23(b). Ex parte AmSouth Bancorporation, 717 So.2d 357,362 (Ala. 1998). Rule 23(a) provides:
 "(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."
Rule 23(b) provides, in pertinent part:
 "(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
". . . .
 "(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions *Page 286 
affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."
In reviewing a class-certification order, this Court looks to see whether the trial court exceeded its discretion in entering the order; however, we review de novo the question whether the trial court applied the correct legal standard in reaching its decision. Reynolds Metals Co.v. Hill, 825 So.2d 100, 104 (Ala. 2002).
 "We note that an abuse of discretion in certifying a class action may be predicated upon a showing by the party seeking to have the class-certification order set aside that `the party seeking class action certification failed to carry the burden of producing sufficient evidence to satisfy the requirements of Rule 23.' Ex parte Green Tree Fin. Corp., 684 So.2d 1302, 1307 (Ala. 1996). Thus, we must consider the sufficiency of the evidence submitted by the plaintiff customers."
Compass Bank v. Snow, 823 So.2d 667, 672 (Ala. 2001). If Grayson failed to meet the evidentiary burden as required by Rule 23, then the trial court exceeded its discretion in certifying a class action. SmartProfessional Photocopy Corp. v. Childers-Sims, [Ms. 1010354, October 11, 2002] 850 So.2d 1245, 1248 (Ala. 2002).
 II.
As noted above, Rule 23(b)(3) requires a finding that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." This requirement "`tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'"Reynolds Metals, 825 So.2d at 104 (quoting Amchem Prods., Inc. v.Windsor, 521 U.S. 591, 623 (1997)). In making this determination, "[c]ourts examine the substantive law applicable to the claims and determine whether the plaintiffs presented sufficient proof that common questions of law or fact predominate over individual claims." VoyagerIns. Cos. v. Whitson, [Ms. 1000678, May 9, 2003] 867 So.2d 1065, 1071
(Ala. 2003). "When individual issues predominate over the common claims, manageability of the action as a class is not possible." Voyager Ins., 867 So.2d at 1077. Therefore, this Court must determine whether Grayson presented sufficient evidence that common questions of law or fact predominate over individual issues as to each of Grayson's claims.
 A. Fraud Claim
Grayson alleges that UFCU committed fraud by representing the $2.50 charge as a "filing fee" when UFCU filed nothing with a governmental agency. (Grayson's brief at 15.) The elements of a fraud action are:
 "`(a) that the defendant made a false representation concerning a material fact; (b) "which (1) the defendant [either] knew was false when made, or (2) was made recklessly and without regard to its truth or falsity, or (3) was made by telling [the] plaintiff that [the] defendant *Page 287 
had knowledge that the representation was true while not having such knowledge"; (c) which the plaintiff [reasonably] relied upon; and (d) "damage to the plaintiff proximately resulting from his reliance.'"
Reynolds Metals, 825 So.2d at 105 (quoting Ex parte Household RetailServs., Inc., 744 So.2d 871, 877 (Ala. 1999), quoting in turn Cato v.Lowder Realty Co., 630 So.2d 378, 381 (Ala. 1993)) (bracketed language added in Reynolds)).
This Court has previously noted that fraud actions are often not well suited for class-action certification. See, e.g., Ex parte Green TreeFin. Corp., 723 So.2d 6, 10 n. 2 (Ala. 1998) ("We note that the difficulties posed by attempting to certify a class where the claims require proof of subjective factors are typical in fraud cases; thus, courts have been reluctant to find fraud claims suitable for class certification.") Courts are reluctant to certify fraud claims for class-action treatment because many fraud cases involve numerous misrepresentations and varying kinds or degrees of reliance, all of which create individualized issues. Id. However, this Court has also stated: "Whether a fraud claim is suitable for class-action treatment depends on the degree of similarity between the representations made to the class members. . . . Courts have often found that cases involving written misrepresentations distributed to all members of the class are suitable for class treatment." Ex parte Household Retail Servs., 744 So.2d at 877; see also Ex parte AmSouth Bancorporation, 717 So.2d 357, 365 (Ala. 1998) ("questions of fraud based on documents are more typically suited for class-action determination"). Grayson argues, and the trial court noted, that the alleged fraud in this case stems from a common, uniform "core" or nucleus of facts, namely, that a uniform misrepresentation was made to each and every member of the putative class: i.e., that they were paying a $2.50 "filing fee" when, in fact, nothing was actually filed with a government agency. Because this alleged misrepresentation is uniform, Grayson argues, common issues predominate.
Even if the alleged misrepresentations in a fraud case are uniform or have a "common core," the action may still be unsuited for class-action treatment if the degree of reliance varies among the persons to whom the representations were made. See Alfa Life Ins. Corp. v. Hughes, [Ms. 1011091, April 25, 2003] 861 So.2d 1088, 1097 (Ala. 2003) ("Even if numerous representations have a `common core,' an action may still be unsuited for class-action treatment if material variations exist in the representations or if the degree of reliance varies among the persons towhom the representations were made." (emphasis added)); see also Committee Comments, Rule 23(b)(3), Fed.R.Civ.P. ("although having some common core, a fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed"). In Hughes, an insurance policyholder alleged that his insurer, Alfa Life Insurance Corporation, had made certain fraudulent misrepresentations to him and to members of a class of policyholders.Hughes, 861 So.2d at 1098. This Court stated:
 "Even if we were to find that the misrepresentations the Alfa agents made to the plaintiff policyholders were uniform, the issue of each class member's `reasonable reliance' precludes class certification of the fraudulent-misrepresentation claim. See Foremost Ins. Co. v. Parham, 693 So.2d 409 (Ala. 1997). The plaintiff policyholders contend that there was common reliance by *Page 288 
the class members and that '[e]veryone acted the same.' Plaintiff policyholders' brief, p. 62 n. 22. The trial court agreed and concluded that because of the objective `reasonable reliance' standard, individualized inquiries would not be necessary. However, a determination of each class member's reliance would require individualized inquiry as to whether that reliance was reasonable '"based on all of the circumstances surrounding [the] transaction, including the mental capacity, educational background, relative sophistication, and bargaining power of the parties.'" Reynolds Metals [Co. v. Hill], 825 So.2d [100] at 108 [(Ala. 2002)] (quoting Foremost Insurance, 693 So.2d at 421))."
861 So.2d at 1100. See also Voyager Ins., 867 So.2d at 1070 (recognizing that the plaintiff's failure to prove whether class members had relied on misrepresentations or omissions made class certification inappropriate).
UFCU maintains that class-action certification is improper in this case in light of the individualized inquiries that would be necessary to prove each class member's reliance on the alleged misrepresentation. Specifically, UFCU claims that Grayson failed to present evidence indicating that any borrower had relied on the representation that the $2.50 charge was to be used to pay for filing documents with a government agency. In support of this contention, UFCU filed in the trial court six affidavits of borrowers who claimed that they had, between 1985 and 2001, executed a promissory note with UFCU, that it did not matter to them what UFCU called the $2.50 charge, and that they would have borrowed from UFCU the money to purchase their vehicles no matter how the charge was described in the promissory note. In addition, Grayson testified as follows at the certification hearing:
 "Q. [UFCU's counsel:] Now, do you have or are you offering the Court today any information about how people other than you perceived what was meant by filing fee?
"A. [Grayson:] Do I have what?
 "Q. Are you offering the Court today any information as to what other members of the class understood the words `filing fee' to mean?
"A. No.
 "Q. And you're aware that we filed affidavits from people saying that they did not believe it was a governmental filing fee, or do you know that one way or another?
"A. I knew there were some affidavits, yes.
". . . .
 "Q. Okay. Now, let me ask you this, if the credit union had said here's $2.50 and it's pure profit, would you have taken out the loan anyway, even if they wanted another $2.50 pure profit?
"A. I don't know. I don't know that I would.
". . . .
 "Q. Are you telling the Court in truth that you would have turned down a loan for that Cadillac [automobile] over $2.50, regardless of what they got?
 "A. I don't know. I might just in principle. There's other lending institutions besides the credit union.
 "Q. But you certainly can't tell the Court that other people would have acted — would have turned that loan down regardless of — over $2.50?
"A. No. And neither can you."
UFCU argues that this testimony demonstrates not only that Grayson did not prove that other members had relied on the alleged misrepresentation, but also *Page 289 
that Grayson did not prove her own reliance on the alleged misrepresentation. We agree.
Based upon the record before us, we hold that Grayson failed to produce sufficient evidence tending to show that any of the putative class members (including herself) relied on the alleged misrepresentation in this case. Therefore, Grayson has failed to demonstrate that the "questions of law or fact" regarding the essential element of reliance are "common to the members of the class [and] predominate over any questions affecting only individual members." Rule 23(b)(3). See ReynoldsMetals, 825 So.2d at 105 (holding that because the class representatives did not testify that they relied on the defendant's alleged misrepresentations, the plaintiffs failed to satisfy their burden of proving that common issues as to the element of reliance predominated over individual issues). In fact, the evidence here instead demonstrates that there are material variations in the degree of reliance of the class members. Because Grayson failed to produce evidence indicating that the common issues predominate over the individual issues with regard to the element of reliance, the trial court exceeded its discretion in certifying this claim for class-action treatment. See Castano v. AmericanTobacco Co., 84 F.3d 734, 745 (5th Cir. 1996) ("a fraud class action cannot be certified when individual reliance will be an issue").
 B. Fraudulent-Suppression Claim
To establish a claim of fraudulent suppression, the plaintiff must produce substantial evidence showing:
 "(1) that the defendant had a duty to disclose an existing material fact; (2) that the defendant suppressed that existing material fact; (3) that the defendant had actual knowledge of the fact; (4) that the defendant's suppression of the fact induced the plaintiff to act or to refrain from acting; and (5) that the plaintiff suffered actual damage as a proximate result."
State Farm Fire Cas. Co. v. Slade, 747 So.2d 293, 323-24 (Ala. 1999).
UFCU argues that Grayson failed to produce sufficient evidence indicating that UFCU owed a duty to any putative class member to disclose or that any class member was induced to secure an automobile loan by UFCU's actions. Additionally, UFCU claims that the trial court would be forced to make a detailed inquiry as to each and every class member to determine whether UFCU owed that member a duty to disclose and whether UFCU had induced each individual to act. This, UFCU maintains, makes the class unmanageable. We agree.
In Ex parte Government Employees Insurance Co., 729 So.2d 299 (Ala. 1999), the trial court was asked to certify a class in an action brought by certain policyholders alleging suppression. In holding that the claim was unsuited for class-action certification, this Court stated:
 "Alabama caselaw emphasizes that in a case alleging fraudulent suppression the trial court must examine the facts to determine whether the defendant had a duty to disclose; this element of duty to disclose, applicable in the case alleging suppression, is analogous to the element of reliance applicable in the case alleging a misrepresentation. Mack v. General Motors Acceptance Corp., 169 F.R.D. 671, 677
(M.D.Ala. 1996). `The impact of this law, however, on the class certification decision, is fatal.' Id. The district court in Mack determined that before it could determine the threshold liability of the defendant, GMAC, to a particular class member, it would have to examine all of the facts and circumstances relating to that individual class member to determine if under Alabama law the *Page 290 
defendant had had a duty to disclose. Id. In the ordinary fraud action, there must be proof of reliance. Id. at 678. Resolving the issue of reliance would require the court to examine the representations made by [the defendant insurer] to each of its policyholders regarding the uninsured-motorist coverage and the medical-payments provision. Id.
`There is a seemingly endless permutation of facts which the court will have to examine to determine the validity of each class member's claim.' Id. It would be overly time-consuming and factually overwhelming to resolve each class member's reliance or lack thereof. To make this essential fraud analysis in this present case would require the court to examine over 36,000 individual policy claims to determine, in each individual situation, the presence of `reliance' or a `duty to disclose.'"
Government Employees Ins. Co., 729 So.2d at 305. Similarly, the trial court in this case will be required to examine the circumstances of each individual class member in order to determine whether UFCU undertook a duty to disclose the nature of the $2.50 "filing fee" to each member. Such inquiries are "individual issues that are inappropriate for class certification." Compass Bank v. Snow, 823 So.2d at 674.
Additionally, as noted in Part II.A., Grayson failed to demonstrate that common questions regarding reliance predominate over individualized questions. In the same vein, Grayson has thus failed show that common questions regarding the analogous issue, whether the putative class members were "induced" to act, predominate over individual questions. SeeHousehold Retail Servs., 744 So.2d at 879 (holding that class certification was inappropriate in an action alleging suppression where the plaintiff failed to demonstrate that the class had relied on the defendant's nondisclosure). Because Grayson presented no evidence indicating that UFCU had a duty to disclose and has failed to prove that the putative class members were induced by UFCU to act, the trial court exceeded its discretion in certifying the suppression claim for class-action treatment.
 C. Breach-of-Fiduciary-Duty Claim
Traditionally, the creditor-debtor relationship between a bank and its customer does not impose a fiduciary duty of disclosure on a bank.Faith, Hope Love, Inc. v. First Alabama Bank of Talladega County,N.A., 496 So.2d 708, 711 (Ala. 1986). On the other hand, a fiduciary duty may arise when a customer reposes trust in a bank and relies on the bank for financial advice, or in other special circumstances. K C Dev.Corp. v. AmSouth Bank, N.A., 597 So.2d 671, 675 (Ala. 1992); Baylor v.Jordan, 445 So.2d 254, 256 (Ala. 1984). Moreover, a fiduciary or confidential relationship has been defined as one in which
 "`one person occupies toward another such a position of adviser or counselor as reasonably to inspire confidence that he will act in good faith for the other's interests, or when one person has gained the confidence of another and purports to act or advise with the other's interest in mind; where trust and confidence are reposed by one person in another who, as a result, gains an influence or superiority over the other; and it appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side, there is an overmastering influence, or, on the other, weakness, dependence, or trust, justifiably reposed; in both an unfair advantage is possible. It arises in cases in which confidence is reposed and accepted, or influence acquired, and in all the variety of relations in which dominion *Page 291 
may be exercised by one person over another.'"
Holdbrooks v. Central Bank of Alabama, N.A., 435 So.2d 1250, 1252
(Ala. 1983) (quoting 15A C.J.S. Confidential (1967)); see also K C Dev. Corp., 597 So.2d at 675.
Grayson claims that a fiduciary duty arose in this case because, she says, UFCU undertook a duty to disclose the nature of the $2.50 charge to the putative class members. As evidence of this duty, Grayson points to Bryan's testimony, in which Grayson claims that Bryan "acknowledged that [UFCU] had an obligation to inform the customer about the `filing fee.'" (Grayson's brief at 20.) The record, however, reveals that Bryan actually testified that he believed UFCU had a duty only to inform its customers that the charge existed, which Bryan claimed UFCU satisfied, and not a duty to explain the details of the charge. There is no other evidence in the record indicating that UFCU undertook a duty to disclose or that it had any other fiduciary relationship with any member of the putative class.
We find that Grayson presented no evidence to indicate that UFCU owed the putative class members a fiduciary duty. In fact, there is no evidence of a relationship other than that of debtor-creditor, which imports no presumption of a fiduciary or confidential relationship. The trial court will thus be required to conduct individual inquiries into each class member's relationship with UFCU in order to determine whether the class members reposed trust in UFCU, whether the members relied on UFCU for financial advice, or whether other special circumstances existed between the member and UFCU. These individualized questions outweigh and predominate over common questions, thus making the breach-of-fiduciary-duty claim improper for class certification under Rule 23(b)(3).
 D. Negligence/Negligent-Supervision Claim
UFCU maintains that the trial court erred in certifying Grayson's negligence/negligent-supervision claim for class-action treatment. We note that a party alleging negligent supervision and hiring must prove the underlying wrongful conduct of the defendant's agents. Voyager Ins.Cos. v. Whitson, 867 So.2d at 1073 (citing Stevenson v. PrecisionStandard, Inc., 762 So.2d 820 (Ala. 1999)). In Voyager Insurance, the plaintiff customers alleged that the defendant, Voyager, negligently hired and/or supervised its agents, resulting in wrongful conduct in the sale of credit-property and credit-life insurance. 867 So.2d at 1073. Additionally, the customers argued that common issues predominated over individualized issues, because their claim was based on Voyager's common course of conduct in charging customers premiums on contracts with Voyager's agents. Id.
This Court noted that the alleged underlying wrongful conduct of Voyager's agents — fraud, suppression, and deceit — required proof of the element of reliance. Voyager Ins., 867 So.2d at 1073. We held that the customers failed to show that common questions of fact regarding this element predominated over individual issues. Id. Therefore, the customers failed to meet their burden under Rule 23(b)(3), and class certification of the negligent-hiring claim was inappropriate. Id.
In this case, Grayson alleges that UFCU was negligent "by allowing, condoning or instructing its employees to do improper and/or illegal acts," namely, "charging non-existent filing fees." While Grayson does not explain the nature of these improper and/or illegal acts, she does incorporate, by reference, the rest of *Page 292 
her complaint. We take this to be an allegation by Grayson that UFCU's employees are guilty of the other torts she alleges in her complaint.
As noted above, Grayson's fraud, fraudulent-suppression, and breach-of-fiduciary-duty claims are not suitable for class-action certification because individual issues predominate over common issues as to those claims, making the class unmanageable. Because the alleged wrongs underlying Grayson's negligent-supervision claim would require individualized determinations, the negligence/negligent-supervision claim likewise is unsuited for class-action certification. Therefore, the trial court exceeded its discretion in certifying the negligence/negligent-supervision claim for class-action treatment. SeeVoyager Ins., supra.
 E. Breach-of-Contract Claim
Grayson claims that UFCU breached its contract with those who executed promissory notes because the "filing fee" was not used to pay for filing documents with a governmental agency. UFCU, on the other hand, claims that the idea that the fee was used to file documents with a governmental agency is Grayson's own subjective interpretation of the contract, which Grayson did not prove was shared by other borrowers. In support of this claim, UFCU argues that Grayson, when asked during the class-certification hearing if the other class members shared her interpretation, stated:
 "[UFCU's counsel:] . . . [W]hat do you understand the filing fee to mean?
 "[Grayson:] I assume that they were filing something with the State or someone.
"Q. It doesn't say that, though, does it?
"A. No.
"Q. You just assumed that?
 "A. When you pay a filing fee, it's paid to have a — somebody file something to get a title of an automobile.
"Q. Normally, it's not $2.50, it's —
"A. Well, yes, you're right, it's usually 16.50.
 "Q. So you can't tell us how — what anyone else thought that meant, can you?
"A. No, I'm sorry. I can't read the minds of strangers.
 "Q. And you can't tell us one way or the other whether a different disclosure would have made any difference to them, can you?
"A. No."
Grayson's testimony, UFCU argues, demonstrates that the term "filing fee" is, at best, ambiguous.
 "When a trial court [in a class action] is [faced] with a contract issue, it is important for the trial court to determine as soon as practicable the `threshold issue' whether the contract is ambiguous. If the trial court determines that there is no ambiguity, it must '"determine the force and effect of the terms of the contract as a matter of law.'" Cherokee Farms, Inc. [v. Fireman's Fund Ins. Co.], 526 So.2d [871] at 873 [(Ala. 1988)], quoting Wigington v. Hill-Soberg Co., 396 So.2d 97, 98 (Ala. 1981). However, if the trial court finds the contract to be ambiguous, it `must employ established rules of contract construction to resolve the ambiguity.' Voyager Life Ins. Co. v. Whitson, 703 So.2d 944, 948
(Ala. 1997). If the application of such rules is not sufficient to resolve the ambiguity, factual issues arise:
 "`If one must go beyond the four corners of the agreement in construing an ambiguous agreement, the surrounding circumstances, including the practical construction put on the language *Page 293 
of the agreement by the parties to the agreement, are controlling in resolving the ambiguity.'
 "Id. at 949. Where factual issues arise, the resolution of the ambiguity becomes a task for the jury. McDonald v. U.S. Die Casting Dev. Co., 585 So.2d 853 (Ala. 1991).
 "It is particularly important for the trial court to determine whether the contract is ambiguous before deciding whether to certify a class. Under some circumstances, this Court has held that the conclusion that a contract was ambiguous was fatal to a claim for class certification. Mann v. GTE Mobilnet of Birmingham, Inc., 730 So.2d 150, 155 (Ala. 1999) (failure to `satisfy the commonality requirement of Rule 23(a)(2) as to questions of fact, because the evidence necessary to resolve those questions of fact will vary from case to case'). See also Lackey v. Central Bank of the South, 710 So.2d 419 (Ala. 1998) (trial court did not abuse its discretion in decertifying a class, when it determined that the evidence of an ambiguity rendered class certification improper on a breach-of-contract claim) (plurality opinion)."
Alfa Life Ins. Corp. v. Johnson, 822 So.2d 400, 404-05 (Ala. 2001) (emphasis added). Additionally, because resolving an ambiguity forces the finder of fact to determine how each individual class member interpreted the ambiguous language, an ambiguity may foreclose the conclusion that common issues predominate over individual issues. General MotorsAcceptance Corp. v. DuBose, 834 So.2d 67, 72-73 (Ala. 2002).
The trial court exceeded its discretion by certifying a Rule 23(b)(3) class action without first determining the "threshold issue" whether the promissory note is ambiguous.[4] Johnson, 822 So.2d at 405. Therefore, on remand, the trial court should determine if the requirement in the promissory note that the party to the note pay a "filing fee" is ambiguous. If so, the trial court should determine what effect the ambiguity has on whether class certification is appropriate. Johnson,supra.
 III.
The trial court's order indicates that it certified Grayson's malicious-conversion claim for treatment as a class action. Grayson's complaint stated this claim as follows:
 "30. The above and foregoing paragraphs are incorporated hereby referenced and are made apart hereof [sic].
 "31. The defendant, UFCU, has failed and refused to refund certain monies to the plaintiff, previously wrongfully deducted from her account, representing the amount of interest charged to her account and UFCU failed and refused to apply these payments to the loan balance, thus providing defendant UFCU additional interest which was not earned.
 "32. Such actions on the part of defendant UFCU constitutes malicious conversion."
Grayson's malicious-conversion count is specific: it alleges that only UFCU's biweekly payroll-deduction plan, not the $2.50 filing fee, amounted to conversion. The trial court, as noted above, did not certify a class as to Grayson's payroll-deduction claim.
Nothing in the record indicates that the complaint was ever amended to *Page 294 
allege that UFCU's charging $2.50 as a "filing fee" also amounted to conversion. See Rule 15, Ala.R.Civ.P. Furthermore, it is axiomatic that a trial court may not certify a class as to a claim not alleged in the complaint. See Allstate Ins. Co. v. Ware, 824 So.2d 739 (Ala. 2002). Because Grayson did not claim that UFCU's charging the $2.50 "filing fee" amounted to a conversion, the trial court exceeded its discretion in certifying that claim for class-action treatment.
 IV.
UFCU claims that the trial court exceeded its discretion in finding that Grayson would fairly and adequately protect the interests of the class. See Rule 23(a)(4). Specifically, UFCU argues that Grayson's interests are in conflict with the class because her husband, who is an attorney, entered into a referral fee agreement with Grayson's class counsel in this case. Thus, UFCU concludes, Grayson has an interest in maximizing the attorney fees in this case instead of the class's award.
Some courts have held that a conflict of interest occurs when a class representative is the spouse of the class counsel. See, e.g., Stull v.Poole, 63 F.R.D. 702 (S.D.N.Y. 1974); but see Sweet v. Bermingham,65 F.R.D. 551, 554 (S.D.N.Y. 1975) (holding that the class representative, who was the spouse of a member of class counsel's firm, did not have interests antagonistic to the class). It is unclear from the record, however, the specific nature of the agreement between Grayson's husband and her class counsel in this case. Class counsel testified at the certification hearing that he planned to pay Grayson's husband a referral fee, but only if the court permitted it. Under these scant facts, we cannot hold that the trial court exceeded its discretion in finding that Grayson could adequately represent the class.
 Conclusion
We hold that the trial court erred in certifying a class action as to Grayson's fraud, suppression, breach-of-fiduciary-duty, malicious-conversion, and negligence/negligent-supervision claims. As to Grayson's breach-of-contract claim, the trial court should determine on remand whether the promissory note is ambiguous and address the impact of its finding on whether Grayson's breach-of-contract action is suited for class certification.
ORDER VACATED; CAUSE REMANDED.
See, Lyons, Harwood, and Stuart, JJ., concur.
[1] "Direct" automobile loans are loans that are initiated by the borrower at the UFCU branch. When it makes a direct loan, UFCU applies for the certificate of title for the financed automobile.
[2] UFCU claims in its brief that the trial court did not certify Grayson's deceptive-trade-practices claim. However, we note that the trial court's order states that Grayson alleged deceptive trade practices as to both of her proposed class actions, and that the trial court certified the "filing fee" class without excepting any of Grayson's causes of action. Neither of the briefs discuss this issue. While it is not clear whether the trial court intended to certify the deceptive-trade-practices claim, we hold that the trial court exceeded its discretion if it did so. See Ala. Code 1975, § 8-19-10(f) ("A consumer or other person bringing an action under this chapter may not bring an action on behalf of a class . . . ."); Ex parte Exxon Corp.,725 So.2d 930, 933 (Ala. 1998) ("Alabama law does not allow consumers to bring class actions based on deceptive trade practices.").
[3] UFCU argues that the trial court's certification order is unclear as to whether the certified class includes UFCU members who entered into promissory notes before 1993, in which the $2.50 charge was denoted as a "pre-paid finance charge" instead of as a filing fee. However, we believe it is clear that the trial court certified claims relating only to members who entered into the new promissory notes, because the trial court's order states it was certifying the claims of those members who had paid a "filing fee." Moreover, certifying a class for members who paid what was denoted as a "prepaid finance charge" would be incongruent with Grayson's theory of the case, namely, that UFCU charged a filing fee although it never filed anything with a governmental agency.
[4] While the record indicates that the trial court determined that the payroll-deduction plan contract was unambiguous, it made no such determination regarding the promissory note.