**REL:**09/12/2014

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0649), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

### SPECIAL TERM, 2014

_____

### 1120010

_____

CVS Caremark Corporation et al.

v.

John Lauriello et al.

_____

### 1120114

_____

John Lauriello et al.

v.

CVS Caremark Corporation et al.

Appeals from Jefferson Circuit Court
(CV-03-6630)

1120010; 1120114

SHAW, Justice.

In case no. 1120010, CVS Caremark Corporation ("Caremark"); American International Group, Inc.; National Union Fire Insurance Company of Pittsburgh, PA; AIG Technical Services, Inc.; and American International Specialty Lines Insurance Company (hereinafter sometimes referred to collectively as "Caremark and the insurers") appeal from the trial court's order certifying as a class action the fraud claims asserted by John Lauriello; James O. Finney, Jr.; Sam Johnson; and the City of Birmingham Retirement and Relief System (hereinafter sometimes referred to collectively as "the plaintiffs"). In case no. 1120114, the plaintiffs cross-appeal from the same class-certification order, alleging that, though class treatment was appropriate, the trial court erred in certifying the class as an "opt-out" class pursuant to Rule 23(b)(3), Ala. R. Civ. P., rather than a "mandatory" class pursuant to Rule 23(b)(1), Ala. R. Civ. P. For the reasons discussed below, we affirm in both appeals.

Facts and Procedural History

In connection with a 1998 nationwide, securities-fraud class action initiated against MedPartners, Inc., a physician-

2

practice-management/pharmacy-benefits-management corporation and the predecessor in interest to Caremark ("the 1998 litigation"), the Jefferson Circuit Court certified a class that included the plaintiffs.[1] Based on the alleged financial distress and limited insurance resources of MedPartners, the 1998 litigation was concluded in 1999 by means of a negotiated "global settlement," pursuant to which the claims of all class members were settled for $56 million -- an amount that, according to the representations of MedPartners, purportedly exhausted its available insurance coverage.[2] Purportedly based on representations of counsel that MedPartners lacked the financial means to pay any judgment in excess of the negotiated settlement and that the settlement amount was thus the best potential recovery for the class, the trial court,

---

[1]The 1998 litigation originated from 21 separate suits in state and federal courts based on allegations that MedPartners, in connection with a planned merger, made false and misleading statements to both the public and the Securities and Exchange Commission concerning its financial condition and its anticipated performance.

[2]This amount was, according to the class representatives, a bargain, given the egregious -- and purportedly indefensible -- nature of the alleged securities violations. In addition to the $56 million settlement of the class-based litigation, the global settlement also included an additional $9 million payout to settle non-class-based litigation.

after a hearing, approved the settlement and entered a judgment in accordance therewith.

Thereafter, however, MedPartners, now Caremark,[3] allegedly disclosed, in unrelated litigation, that it had actually obtained -- and thus had available during the 1998 litigation -- an excess-insurance policy providing alleged "unlimited coverage" with regard to its potential-damages exposure in the 1998 litigation -- the existence of which it had purportedly concealed in negotiating the class settlement. As a result, in 2003, Lauriello, seeking to be named as class representative, again sued Caremark and the insurers in the Jefferson Circuit Court, pursuant to a class-action complaint alleging misrepresentation and suppression -- specifically, that Caremark and the insurers had misrepresented the amount of insurance coverage available to settle the 1998 litigation and that they also had suppressed the existence of the purportedly unlimited excess policy -- on behalf of himself and all others similarly situated, i.e., the members of the class certified in the 1998 litigation. Alternatively,

---

[3]Nothing before this Court suggests that Caremark, as successor in interest to MedPartners, did not assume all of MedPartners' assets and liabilities.

Lauriello sought relief from the judgment pursuant to Rule 60(b), Ala. R. Civ. P. Frank G. McArthur, Bill Greene, and Virginia Greene, also members of the class certified in the 1998 litigation, filed a separate but substantially similar action in the Jefferson Circuit Court; their proposed class-action complaint asserted claims almost identical to Lauriello's but named, as additional defendants, plaintiffs' counsel from the 1998 litigation.

In January 2005, the trial court issued an "Order on Class Certification," in which it concluded that it was unnecessary to certify a new class because, pursuant to the terms of the settlement agreement in the 1998 litigation, it retained jurisdiction of all matters relating to the settlement, including Lauriello's newly asserted fraud claims. Subsequently, Caremark and the insurers simultaneously appealed the trial court's January 2005 order and filed a petition for a writ of mandamus seeking relief therefrom. See Ex parte Caremark RX, Inc., 956 So. 2d 1117 (Ala. 2006).

Also in response to the trial court's order, McArthur, Bill Greene, and Virginia Greene (hereinafter sometimes referred to collectively as "the intervenors") sought to

5

intervene in the Lauriello litigation, challenging the qualifications of both Lauriello and his counsel to represent the class and specifically adding as defendants in the complaint in intervention both Lauriello and plaintiffs' counsel from the 1998 litigation. The trial court denied that request as untimely; the intervenors appealed.

This Court, in considering the consolidated appeals and petition for the writ of mandamus, concluded that the petition for the writ of mandamus was the appropriate avenue by which to challenge the trial court's order.[4] As a result, we dismissed the direct appeal filed by Caremark and the insurers. 956 So. 2d at 1119-20. We further granted the mandamus petition and directed the trial court to vacate the challenged order on the ground that any action by Lauriello purportedly filed pursuant to Rule 60(b) was untimely in that it had not been filed within four months after the judgment from which Lauriello sought relief as mandated by Rule 60(b). 956 So. 2d at 1124. In addition, we noted that because Lauriello had added new defendants, namely insurers that had

---

[4]In reaching this conclusion, we specifically noted that the "the trial court's ... order was not one certifying or refusing to certify a class...." 956 So. 2d at 1119.

not been named in the 1998 litigation, "Lauriello [was] not seeking merely to reopen the settlement agreement [therein] to renegotiate the amount of damages payable to the class ...." 956 So. 2d at 1125. Therefore, despite the fact that the class identified by Lauriello was indisputably identical to the class certified by the trial court in the 1998 litigation, we nonetheless concluded that, in order to certify the class in the new action, Rule 23, Ala. R. Civ. P., and § 6-5-641, Ala. Code 1975, required the trial court's performance of a "rigorous analysis" to consider, as to the proposed class members, "their relationship to the particular claims and defenses to be asserted in the [new] class action," which the trial court had clearly failed to evaluate with regard to the suitability for class treatment. 956 So. 2d at 1125. As to the intervenors' appeal, we reversed the trial court's order denying them intervention based on our findings that "none of the parties [would] be prejudiced by the intervention, ... justice [might] not be attained if intervention [was] not allowed, and ... intervention at this stage of the litigation would not prejudice the ... parties." 956 So. 2d at 1129.

Following the release of our opinion, proceedings resumed in the trial court in accordance with that opinion, including the trial court's entry of an order deeming the intervenors' "Class Action Complaint in Intervention" filed. Lauriello amended his class-action complaint to add Finney, Johnson, and the City of Birmingham Retirement and Relief System ("the Retirement System") as additional named plaintiffs; the newly added plaintiffs later moved to be named as class representatives.

Following the defendants' answers to the amended complaint, the trial court entered an order dismissing with prejudice "the lawyer defendants"[5] added by the intervenors' complaint in intervention on the ground that the four-year statute of repose applicable under the Alabama Legal Services Liability Act, see § 6-5-574, Ala. Code 1975, barred all claims against them. The trial court certified that judgment as final pursuant to Rule 54(b), Ala. R. Civ. P., and the

---

[5]This designation includes the following lawyers and/or firms who served as plaintiffs' counsel in the 1998 litigation: Yearout & Traylor, P.C.; Lowey, Danenberg, Bemporad, Selinger & Cohen, P.C.; Milberg Weiss & Bershad LLP (formerly known as Milberg Weiss Bershad & Schulman LLP, formerly known as Milberg Weiss Bershad Hynes & Lerach LLP); William S. Lerach; Neil L. Selinger; Steven E. Cauley; Stephen E. Cauley, P.A.; D'Amato & Lynch; and Richard George.

8

intervenors again timely appealed. The trial court, thereafter, denied Lauriello's motion seeking to similarly dismiss the remaining claims asserted against him by the intervenors' complaint. This Court subsequently affirmed, without an opinion, the trial court's dismissal of the lawyer defendants. See McArthur v. Yearout & Traylor, P.C. (No. 1070513, Sept. 12, 2008), 34 So. 3d 737 (2008) (table).

Following our no-opinion affirmance, proceedings again resumed in the trial court, including the voluntary dismissal of intervenor Bill Greene as a party and the withdrawal by the remaining intervenors, McArthur and Virginia Greene, of their complaint in intervention, including the claims against Lauriello, and their motion seeking to disqualify Lauriello and Lauriello's counsel pursuant to a "Lead Counsel Agreement" reached between the two plaintiff groups and their respective counsel.[6] In addition, Lauriello withdrew his previous request to be appointed a class representative.

---

[6]McArthur was, in fact, later dismissed on his own motion as a party; therefore, of the three original intervenors, only Virginia Greene, whose current legal name, according to the record on appeal, is now Virginia Greene Hoffman, remains a party.

Thereafter, discovery as to the class-certification issue commenced. The record reflects numerous discovery-related disputes, which ultimately necessitated the trial court's appointment of a special master to oversee the process.[7] The plaintiffs, thereafter, sought certification pursuant to Rule 23(b)(1) and (b)(3), Ala. R. Civ. P. The plaintiffs' certification request was supported by an accompanying brief and numerous evidentiary exhibits and was opposed on various grounds by Caremark and the insurers.

The trial court, as directed by this Court in Ex parte Caremark, subsequently conducted a lengthy class-certification hearing during which it both heard testimony and received numerous evidentiary submissions. Following the parties' further submission of post-hearing briefs, the trial court issued an order granting class-action certification under Rule 23(b)(3) based upon its purported rigorous analysis, which resulted in the following findings:

> "Alabama Rule of Civil Procedure 23(a) --
> Prerequisites to a Class Action -- states that:

---

[7]At or around this time, the plaintiffs again amended their class-action complaint to more accurately reflect Caremark's corporate name as "CVS Caremark Corporation."

10

"'One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.'

"1. Numerosity

"'The test is whether the number of members in the class is so numerous as to make joinder impracticable. Ala. R. Civ. P. 23(a)(1); State Farm Fire & Cas. Co. v. Evans, 956 So. 2d 390 (Ala. 2006).' American Bar Association Survey of State Class Action Law: Alabama § 5 (database updated Dec. 2011). From the administration of this class's Fifty Six Million and No/100 ($56,000,000.00) Dollar settlement in 1999, it is clear there are about 80,000 potential class members, and it is certain that approximately 18,000 actually filed claims that were verified and approved. Thus, Plaintiffs have carried their burden of proving numerosity. Furthermore, Defendants do not dispute the issue.

"2. Commonality

"'Commonality requires only that there be common questions of law or fact.... [W]here essentially identical representations are made at different times to different class members but share a common thread and are redressable under the same theory of recovery, the test of commonality may be met.' ABA Survey, supra, at Alabama § 5. As shown by facts presented above and the evidence presented to the Court during the certification hearing, the Court is convinced that there are common questions of law and

11

fact regarding every class member. Furthermore, like numerosity, Defendants do not dispute the issue.

"3. Typicality

"The typicality element is satisfied only if 'the relationship between the injury to the class representative and the conduct affecting the entire class of plaintiffs [is] sufficient for the Court to properly attribute a collective nature to the challenged conduct.' Warehouse Home Furnishing Distributors, Inc. v. Whitson, 709 So. 2d 1144, 1149 (Ala. 1997). To meet the typicality requirement, there must be 'a sufficient nexus ... between the legal claims of the named class representatives and those individual class members to warrant class certification.' Prado-Steiman v. Bush, 221 F.3d 1266, 1278 (11th Cir. 2000).

"The three proposed class representatives, James O. Finney, Jr., Sam Johnson and the City of Birmingham Retirement and Relief System, have claims typical of the proposed class as each was a member of the 1999 Settlement Class.

"Defendants argue that the typicality requirement cannot be met on this record because of the three subclasses -- common stock, TAPS and tender offer -- which existed in the underlying 1999 Settlement Class.[8] It is Defendants' position that each of the proposed class representatives is a

_____

[8]The original class included three subclasses of purchasers of MedPartners' securities: purchasers of MedPartners common stock during the applicable period; persons who purchased MedPartners 6 ½% Threshold Appreciation Price Securities ("TAPS") in a September 15, 1997, public offering or who purchased TAPS thereafter that were traceable to the public offering; and purchasers who tendered common shares of Talbert Medical Management Holdings Corporation to MedPartners in a tender offer.

member of the common stock subclass and, therefore, they do not have claims which are typical of the TAPS and tender offer subclasses.

"When examining whether these proposed class representatives present claims typical of the entire class, it is critical to understand that the parties are not re-litigating the underlying securities fraud claims. The claim presented in this action is for fraud-in-the-settlement. The alleged fraud did not vary depending on whether one owned common stock, TAPS or a tender offer. Any alleged fraud touched all class members identically.

"It is the Court's determination that any conflicts between the subclasses were resolved in the 1999 class settlement. The three subclasses, with representation, and with joint participation of Defendants, settled all differences in Judge Wynn's court. The subclasses agreed in 1999 on a formula that defined how any class action recovery was to be distributed. All conflicts between the subclasses have been litigated and resolved.

"Given the 1999 class settlement and the nature of the allegations in this action, it is this Court's conclusion that James O. Finney, Jr., Sam Johnson and the City of Birmingham Retirement and Relief System present claims typical of the proposed class."

Applying an identical rationale, the trial court similarly found that Finney, Johnson, and the Retirement System "are adequate to represent this class."

In addition, noting that "[a]lthough all parties agree that proposed class counsel are adequate to prosecute class actions, the parties disagree on whether these attorneys are

1120010; 1120114

competent and/or able to adequately represent this proposed class," the trial court considered and rejected, in turn, each challenge by Caremark and the insurers to proposed class counsel. Ultimately, as to this issue, the trial court concluded:

> "In opposition of proposed class counsel, Defendants have raised every possible roadblock and issue to endeavor to influence this Court to find proposed class counsel inadequate, as such is their duty. In their endeavor to have proposed class counsel disqualified, Defendants know full well that if this Court rules with them on this issue Defendants will have gained a victory without having to adjudicate this case before an Alabama jury.

> "Litigation is combative, particularly where the damages sought may exceed Three Billion and No/100 ($3,000,000,000.00) Dollars. These plaintiff attorneys [sic] have labored thousands of hours since 2003 seeking to represent and protect this proposed class, and have done so without remuneration for their time and monumental expenses incurred. Here, adequacy, not perfection, is the trait that this Court and the Supreme Court are seeking based upon the statute, the caselaw and Alabama Rule of Civil Procedure 23. This civil action spanning into its tenth year is so complex and replete with filings, depositions and rulings, it is a virtual certainty that no lawyer and/or law firm would now invest the time and incur the expense to represent this class.

> "Finally, Alabama Rule of Civil Procedure 1 states that '[the] rules shall be construed and administered to secure the just, speedy and inexpensive determination of every action.' Given this mandate to apply the Alabama Rule of Civil

14

1120010; 1120114

> Procedure 23 justly, it is this Court's considered judgment, as laid out above, that the Hare Wynn, North and Somerville firms are deemed adequate to represent this proposed class."

Finally, having concluded that the plaintiffs satisfied the initial prerequisites to maintaining a class action, as set out in Rule 23(a), Ala. R. Civ. P., the trial court next determined that the plaintiffs had likewise met the additional requirement of satisfying Rule 23(b)(3). See, e.g., University Fed. Credit Union v. Grayson, 878 So. 2d 280, 286 (Ala. 2003). In reaching that conclusion, the trial court specifically rejected the objections of Caremark and the insurers to class certification, i.e., the alleged individual reliance of each class member on the purported misrepresentation and the potential for the necessity of applying conflicting laws from various states. Noting both that the conflict-of-law argument raised by Caremark and the insurers was untimely and that the parties' stipulation of settlement provided that Alabama law controlled, the trial court concluded that the only real challenge to Rule 23(b)(3) certification was the claim by Caremark and the insurers that issues of individual reliance predominated over common questions of law and fact.

15

1120010; 1120114

In sum, in consideration of the foregoing findings, the trial court appointed Finney, Johnson, and the Retirement System as class representatives; appointed Hare, Wynn, Newell & Newton; North & Associates; and Somerville, LLC, as class counsel, and certified a class consisting of the following:

> "All Persons who (i) purchased MedPartners, Inc. ('MedPartners') common stock [including, but not limited to, through open-market transactions, mergers or acquisitions in which MedPartners issued common stock, acquisition through the Company's Employee Stock Purchase Plan ('ESPP'), and any other type of transaction in which a person acquired one or more shares of MedPartners stock in return for consideration] during the period from October 30, 1996, through January 7, 1998, inclusive (MedPartners employees who purchased shares through the ESPP in January 1998 being deemed to have purchased their shares on December 31, 1997); (ii) purchased call option contracts on MedPartners common stock during the period October 30, 1996, through January 7, 1998, inclusive; (iii) sold put option contracts on MedPartners common stock during the period October 30, 1996, through January 7, 1998, inclusive; or (iv) purchased MedPartners Threshold Appreciation Price Securities ('TAPS') in the September 15, 1997, offering or thereafter through January 7, 1998; or (v) tendered shares of Talbert Medical Management Holdings Corporation to MedPartners between August 20, 1997, and September 19, 1997 ('The Settlement Class'); excluding all those members who opted out of the 1999 Class Settlement."[9]

---

[9]The description of the certified class is, excepting the addition of the final phrase excluding members who opted out of the class certified in the 1998 litigation, identical to the class certified by the trial court in the 1998 litigation.

16

1120010; 1120114

The parties appeal from the trial court's class-certification order. See § 6-5-642, Ala. Code 1975 ("A court's order certifying a class or refusing to certify a class action shall be appealable in the same manner as a final order to the appellate court which would otherwise have jurisdiction over the appeal from a final order in the action.").

## Standard of Review

"'This Court has stated that "class actions may not be approved lightly and ... the determination of whether the prerequisites of Rule 23 have been satisfied requires a 'rigorous analysis.'"' Mayflower Nat'l Life Ins. Co. v. Thomas, 894 So. 2d [637] at 641 [(Ala. 2004)] (quoting Ex parte Citicorp Acceptance Co., 715 So. 2d 199, 203 (Ala. 1997)). 'In reviewing a class-certification order, this Court looks to see whether the trial court exceeded its discretion in entering the order; however, we review de novo the question whether the trial court applied the correct legal standard in reaching its decision.' University Fed. Credit Union v. Grayson, 878 So. 2d 280, 286 (Ala. 2003). Furthermore,

"'[w]e note that an abuse of discretion in certifying a class action may be predicated upon a showing by the party seeking to have the class-certification order set aside that "the party seeking class action certification failed to carry the burden of producing sufficient evidence to satisfy the requirements of Rule 23." Ex parte Green Tree Fin. Corp., 684 So. 2d 1302, 1307 (Ala. 1996). Thus, we must consider

17

> the sufficiency of the evidence submitted by the plaintiff[s]....'

"Compass Bank v. Snow, 823 So. 2d 667, 672 (Ala. 2001). See also Smart Prof'l Photocopy Corp. v. Childers-Sims, 850 So. 2d 1245, 1249 (Ala. 2002) (holding that if plaintiffs fail to meet the evidentiary burden as required by Rule 23, Ala. R. Civ. P., then the trial court exceeds its discretion in certifying a class action). If the plaintiffs here have failed to meet the evidentiary burden as required by Rule 23, then the trial court exceeded its discretion in certifying a class action."

Eufaula Hosp. Corp. v. Lawrence, 32 So. 3d 30, 34-35 (Ala. 2009).

### Discussion

### I. Case No. 1120010

"In order to obtain class certification, the plaintiffs must establish all the criteria set forth in Rule 23(a), Ala. R. Civ. P., and at least one of the criteria set forth in Rule 23(b). University Federal Credit Union v. Grayson, 878 So. 2d [280] at 286 [(Ala. 2003)]. Rule 23(a) provides:

> "'(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.'

18

1120010; 1120114

"Rule 23(b) provides, in pertinent part:

"'(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

"'....

"'(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

"'(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties

19

1120010; 1120114

> likely to be encountered in the
> management of a class action.'"

Lawrence, 32 So. 3d at 35.  In the instant case, the trial court certified the class action under Rule 23(b)(3).  On appeal, Caremark and the insurers present several challenges to the trial court's class-certification order.

## A.  Alleged Predomination of Individual Issues

First, Caremark and the insurers contend that the trial court exceeded its discretion in certifying the class pursuant to Rule 23(b)(3) because, they argue, the individual issues necessarily attendant to fraud claims predominate and render class certification inappropriate. More specifically, relying on past decisions of this Court indicating that "fraud claims are uniquely unsuited for class treatment," see, e.g., Compass Bank v. Snow, 823 So. 2d 667, 673 (Ala. 2001) (internal citations and quotation marks omitted), the plaintiffs argue that each member of the class must be individually questioned -- purportedly pursuant to the rules applicable in their various jurisdictions -- regarding the circumstances of that member's alleged knowledge of and reliance on the alleged misrepresentations regarding the insurance proceeds available to MedPartners.  The plaintiffs counter that authorities cited

20

by Caremark and the insurers are inapposite in that they "deal[] with <u>individual</u> fraud scenarios," whereas, here, <u>it was the class itself [-- an 'entity' separate from the individual members comprising the class --] that was defrauded</u>" as a result of the fraud perpetrated on the class's appointed agent. Plaintiffs' brief, at p. 26.

> "As noted above, Rule 23(b)(3) requires a finding that 'questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.' This requirement '"tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."' <u>Reynolds Metals [Co. v. Hill]</u>, 825 So. 2d [100] at 104 [(Ala. 2002)] (quoting <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 623, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)). In making this determination, '[c]ourts examine the substantive law applicable to the claims and determine whether the plaintiffs presented sufficient proof that common questions of law or fact predominate over individual claims.' <u>Voyager Ins. Cos. v. Whitson</u>, 867 So. 2d 1065, 1071 (Ala. 2003). 'When individual issues predominate over the common claims, manageability of the action as a class is not possible.' <u>Voyager Ins.</u>, 867 So. 2d at 1077. Therefore, this Court must determine whether [the plaintiffs] presented sufficient evidence that common questions of law or fact predominate over individual issues as to [the plaintiffs' fraud-based] claims."

<u>Grayson</u>, 878 So. 2d at 286.

21

The parties' counsel acknowledge that they were unable to find a decision directly on point with the factual circumstances of the present case, i.e., a decision involving allegations of a fraud perpetrated on a certified class in connection with the settlement of the class action in which that class had previously been certified. Regardless, however, there are available certain established principles that guide our resolution of this issue.

First, it is undisputed that both the plaintiffs' misrepresentation and suppression claims include, as the plaintiffs contend, a reliance element. See Grayson, supra, at 286-87, 289 (noting that the elements of a fraud action necessarily include a demonstration that the plaintiff reasonably relied on the alleged misrepresentation to his or her detriment and that the elements of a fraudulent-suppression claim include a demonstration that the alleged suppression "induced the plaintiff to act or to refrain from acting"). See also Regions Bank v. Lee, 905 So. 2d 765, 774 (Ala. 2004) ("The element of a duty to disclose in a fraudulent-suppression case is analogous to the element of reliance in a misrepresentation case." (citing Mack v. General

1120010; 1120114

Motors Acceptance Corp., 169 F.R.D. 671, 677 (M.D. Ala. 1996))).

Additionally, it is true, as this Court has previously acknowledged, that the reliance element in fraud claims generally renders such claims unsuitable for class treatment. See, e.g., Snow, supra. That general principle, however, is not a hard and fast rule applicable in all fraud cases, as we have explained:

> "We agree with the [In re] Memorex [Security Cases, 61 F.R.D. 88, 98 (N.D. Cal. 1973) (securities-fraud cases),] court and hold that the issue whether proof of reliance involves so many individual questions of fact that the individual questions of fact predominate should be addressed at the initial stage of the proceeding.

> "As noted above, two other schools of thought exist as to whether proof of reliance raises too many individual questions of fact to certify a fraud action as a class action. One school prohibits the certification of fraud class actions, and the other examines the facts of each case according to the applicable rule of civil procedure.

> "Without addressing the issue of class-action treatment of the issue of reliance, this Court has affirmed the certification of fraud class actions. See Warehouse Home Furnishing Distributors, Inc. v. Whitson, 709 So. 2d 1144 (Ala. 1997); Ex parte Gold Kist, 646 So. 2d 1339 (Ala. 1994); Harbor Ins. Co. v. Blackwelder, 554 So. 2d 329 (Ala. 1989). Significantly, in Harbor Insurance Co., this Court held that '[w]here plaintiffs allege and prove a standard claim for fraud based on misrepresentations with a common thread, as is the case here, their

23

cause is maintainable as a class action.' 554 So. 2d at 335. But, in Butler v. Audio/Video Affiliates, Inc., 611 So. 2d 330 (Ala. 1992), this Court affirmed the denial of certification in a fraud class action, where the denial was based, in part, on varying oral representations that created too many individual issues of reliance and damages. Butler, 611 So. 2d at 332. The differences in these cases indicate that this Court has not thus far adopted a blanket prohibition against the certification of a fraud class action. Therefore, as with other courts that have addressed the issue, we must consider whether proof of reliance in this case involves predominating individual issues of fact. In so doing, we use the same standard as the federal courts, i.e., whether there 'was a material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed.' Advisory Committee Notes to Rule 23(b)(3) (on 1966 amendments to rules), Fed. R. Civ. P."

Ex parte Household Retail Servs., Inc., 744 So. 2d 871, 881

(Ala. 1999) (emphasis added).

Further, we have stated:

"'Whether a fraud claim is suitable for class-action treatment depends on the degree of similarity between the representations made to the class members.... Courts have often found that cases involving written misrepresentations distributed to all members of the class are suitable for class treatment.' Ex parte Household Retail Servs., 744 So. 2d at 877; see also Ex parte AmSouth Bancorporation, 717 So. 2d 357, 365 (Ala. 1998) ('questions of fraud based on documents are more typically suited for class-action determination'). Grayson argues, and the trial court noted, that the alleged fraud in this case stems from a common, uniform 'core' or nucleus of facts, namely, that a uniform misrepresentation was made to each and every

24

member of the putative class: i.e., that they were paying a $2.50 'filing fee' when, in fact, nothing was actually filed with a government agency. Because this alleged misrepresentation is uniform, Grayson argues, common issues predominate.

"Even if the alleged misrepresentations in a fraud case are uniform or have a 'common core,' the action may still be unsuited for class-action treatment if the degree of reliance varies among the persons to whom the representations were made. See Alfa Life Ins. Corp. v. Hughes, 861 So. 2d 1088, 1097 (Ala. 2003) ('Even if numerous representations have a "common core," an action may still be unsuited for class-action treatment if material variations exist in the representations or if the degree of reliance varies among the persons to whom the representations were made.' (emphasis added)); see also Committee Comments, Rule 23(b)(3), Fed. R. Civ. P. ('although having some common core, a fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed'). In Hughes, an insurance policyholder alleged that his insurer, Alfa Life Insurance Corporation, had made certain fraudulent misrepresentations to him and to members of a class of policyholders. Hughes, 861 So. 2d at 1098. This Court stated:

"'Even if we were to find that the misrepresentations the Alfa agents made to the plaintiff policyholders were uniform, the issue of each class member's "reasonable reliance" precludes class certification of the fraudulent-misrepresentation claim. See Foremost Ins. Co. v. Parham, 693 So. 2d 409 (Ala. 1997). The plaintiff policyholders contend that there was common reliance by the class members and that "[e]veryone acted the same." Plaintiff policyholders'

25

> > brief, p. 62 n. 22. The trial court agreed and concluded that because of the objective "reasonable reliance" standard, individualized inquiries would not be necessary. However, a determination of each class member's reliance would require individualized inquiry as to whether that reliance was reasonable "'based on all of the circumstances surrounding [the] transaction, including the mental capacity, educational background, relative sophistication, and bargaining power of the parties.'" Reynolds Metals [Co. v. Hill], 825 So. 2d [100] at 108 [(Ala. 2002)] (quoting Foremost Insurance, 693 So. 2d at 421)).'
>
> "861 So. 2d at 1100. See also Voyager Ins. [Cos. v. Whitson], 867 So. 2d [1065] at 1070 [(Ala. 2003)] (recognizing that the plaintiff's failure to prove whether class members had relied on misrepresentations or omissions made class certification inappropriate)."

Grayson, 878 So. 2d at 287-88 (first emphasis added). Thus, as Caremark and the insurers argue, "a fraud claim is not certifiable as a class action when individual reliance is an issue." Lee, 905 So. 2d at 775 (emphasis added).

Here, however, the class-based fraud claim rests upon the purported representation by the defendants and/or their representatives to counsel for the original class certified in the 1998 litigation to induce counsel to accept a reduced settlement offer on behalf of the entire class. Thus, the alleged misrepresentation was uniform and the class members'

26

individual reliance irrelevant. See Ex parte Household Retail Servs., 744 So. 2d at 877 ("Courts have often found that cases involving written misrepresentations distributed to all members of the class are suitable for class treatment."); Grainger v. State Sec. Life Ins. Co., 547 F.2d 303, 307 (5th Cir. 1977) ("[T]he key concept in determining the propriety of class action treatment is the existence or nonexistence of material variations in the alleged misrepresentations."). This fact distinguishes the present case from the authorities cited by Caremark and the insurers, in which a finding of liability is necessarily dependent upon varying communications to individual class members and the class members' varying reliance on those communications. Compare Ex parte Household Retail Servs., 744 So. 2d at 878-79 (concluding that the trial court erred in certifying a fraud claim for class treatment when the evidence demonstrated that oral representations made to the class members were not standardized but, instead, that the class members had dealt with different salespersons employed by different dealers); Compass Bank v. Snow, 823 So. 2d at 674-76 (concluding that the plaintiff customers failed to satisfy the predominance requirement of Rule 23(b)(3), Ala. R. Civ. P., as to their fraudulent-suppression claim when

27

individual issues regarding each customer's knowledge of the posting order used by the bank defendant and the extent to which each customer relied on that knowledge predominated over common issues); Reynolds Metals Co. v. Hill, 825 So. 2d 100 (Ala. 2002) (holding, despite the alleged uniform nature of the oral representation, that evidence disputing common reliance by the plaintiff employees on that representation demonstrated that individualized issues necessarily predominated); Alfa Life Ins. Corp. v. Hughes, 861 So. 2d 1088, 1100 (Ala. 2003) (reversing the trial court's class certification of a fraudulent-suppression claim on the ground that, even assuming the alleged misrepresentations were uniform, "a determination of each class member's reliance would require individualized inquiry as to whether that reliance was reasonable '"based on all of the circumstances surrounding [the] transaction, including the mental capacity, educational background, relative sophistication, and bargaining power of the parties"'" (quoting Reynolds Metals, 825 So. 2d at 108)); Voyager Ins. Cos. v. Whitson, 867 So. 2d 1065, 1074 (Ala. 2003) (affirming the trial court's denial of class treatment as to fraud-based claims when the record failed to establish "whether the customers relied on varying

28

representations made by the sales representatives instead of on the alleged nondisclosure or ... whether the information allegedly not disclosed would have made a difference ...."); Grayson, 878 So. 2d at 288-89 (vacating the trial court's certification order on the ground that the evidence demonstrated material variations in individual class members' reliance on alleged misrepresentation); Lee, 905 So. 2d at 775-76 (holding, despite the collective nature of the duty owed by the bank to bondholders and the collective nature of the bondholders' remedy, that individual issues nonetheless predominated, as "the trial court would have to determine whether the individual bondholders received notice of the occurrence of an event of default, if a majority of the bondholders would have agreed to take action upon notice of the default ... and what specific action they would have elected to take").

Under the present circumstances, we find persuasive the following rationale:

"[In] In re Baldwin-United Corp. Litig. [122 F.R.D. 424, 426-27 (S.D.N.Y. 1986)[10]], a class of investors

[10]Because the Alabama Rules of Civil Procedure were patterned after the Federal Rules of Civil Procedure, cases construing the federal rules are considered authority in

29

asserting federal securities, RICO, and state law claims against broker-dealers and a promotional corporation in a fraud action was certified despite the defendants' contention that the core issues in the plaintiffs' complaint turned on largely oral rather than written representation or on nonuniform documents that would require greater investigation and analysis of individual facts than class treatment would allow:

> "'This Court disagrees. <u>The nub of plaintiffs' claims is that material information was withheld from the entire putative class in each action, either by written or oral communication. [Essentially, this is a course-of-conduct case, which as pleaded satisfies the commonality requirement of Rule 23, Fed. R. Civ. P.]</u> ... Plaintiffs allege not that the promotional materials themselves were uniform, but rather that the information they contained -- and hence that the broker-dealers disseminated -- was uniformly misleading. ... Liability in this case does not depend on proof of the individual, face-to-face dealings between the class members and the registered representatives of the broker-dealers.... As a result, the relevant questions are readily susceptible to class-wide proof.'"

4 Herbert B. Newberg & Alba Conte, <u>Newberg on Class Actions</u> § 22.15 at 22-46 (3d ed. 1992) (emphasis added; footnotes omitted). Indeed, we have previously noted that "[w]here plaintiffs allege and prove a standard claim for fraud based

---

construing the Alabama rules. <u>Cutler v. Orkin Exterminating Co.</u>, 770 So. 2d 67, 70 n.2 (Ala. 2000).

on misrepresentations with a common thread, as is the case here, their cause is maintainable as a class action." Harbor Ins. Co. v. Blackwelder, 554 So. 2d 329, 335 (Ala. 1989). See also Ex parte Household Retail Servs., 744 So. 2d at 877 ("Whether a fraud claim is suitable for class-action treatment depends on the degree of similarity between the representations made to the class members."). Further, there is nothing to suggest that any of the class members ever engaged in any type of oral communication with Caremark and the insurers and/or any representative thereof; thus, there is no danger of the individualized oral misrepresentations that have rendered the cases relied on by the plaintiffs unsuitable for class treatment.

Instead, here, the class's fraud claims result from the fact that the class as a whole -- not each individual member -- was defrauded. As noted by Professor William B. Rubenstein, the plaintiffs' retained expert and the current editor of Newberg on Class Actions, supra -- an authority on which this Court has often relied -- "[i]n settling the [1998 litigation], the defendants did not negotiate with individual class members" but, instead, "negotiated solely with the class's agents and then sought approval of that settlement

from the class's fiduciary."  Thus, as Professor Rubenstein further explained:

> "[T]he normal problems that plague certification of fraud cases do not ... apply here for one simple reason related to the unique nature of this case: this is a class action lawsuit about a class action lawsuit, not about a set of individual market transactions.  The nature of the underlying transaction -- the class action lawsuit -- renders individual class member reliance irrelevant."

In consideration of the foregoing, we hold that the evidence supports the trial court's conclusion that the plaintiffs satisfied the predominance requirement of Rule 23(b)(3) in that the fraud claims present questions of law and fact that are common to the class and that they are therefore suitable for trial pursuant to a single adjudication. Therefore, Caremark and the insurers have failed to demonstrate that the trial court exceeded its discretion in certifying the class based on its conclusion that common issues predominate.[11]  See In re Warfarin Sodium Antitrust Litig., 212 F.R.D. 231, 249 (D. Del. 2002), aff'd, 391 F.3d

_____

[11]In making this determination, we express no opinion as to the merits of the newly asserted fraud claims.  See Mayflower Nat'l Life Ins. Co. v. Thomas, 894 So. 2d 637, 641 (Ala. 2004) ("On a motion for class certification, the sole issue before the trial court is whether the requirements of Rule 23 have been met ....").

516 (3d Cir. 2004) ("The fact that plaintiffs alleged purely economic harm from a common cause ... further supports certification of the class."); In re Towers Fin. Corp. Noteholders Litig., 177 F.R.D. 167, 171 (S.D.N.Y. 1997) ("The predominance inquiry tests 'whether proposed classes are sufficiently cohesive to warrant adjudication by representation.' Amchem Prods., Inc. v. Windsor, 521 U.S. [591] at 621, 117 S.Ct. [2231] at 2249 [(1997)]. As the Advisory Committee Notes make clear, 'a fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action....' Fed. R. Civ. P. 23(b)(3) Advisory Committee's Note; accord, e.g., Green v. Wolf, 406 F.2d [291] at 300-01 [(C.A.N.Y. 1968)]."). The unique facts of this case -- the alleged representations were made to the class's agents (counsel) -- distinguishes this case from those in which the reliance of individual class members was at issue. In reaching this conclusion we specifically reject the importance of the pre-settlement differences among class members, which Caremark and the insurers emphasize. Cf. Walco Invs., Inc. v. Thenen, 168 F.R.D. 315, 325 (S.D. Fla. 1996) (noting, in recognizing the similarity of the common-issue requirement of Rule 23(a)(2)

and the predominance requirement of 23(b)(3), that, "[w]hile it may be true ... that unique defenses will be asserted by the Defendants in this action, this fact alone is insufficient to destroy the commonality requirement," because "the commonality prerequisite does not require that all of the questions of law and/or fact be common").

B.  Class Counsel as Necessary Witnesses

Caremark and the insurers also argue on appeal that current class counsel cannot meet the adequacy requirements of Rule 23(a)(4), Ala. R. Civ. P., because, they say, "[c]lass counsel ... will be necessary witnesses for the defense, and their testimony will be adverse to the class."  Caremark and the insurers' brief, at p. 63.  Therefore, they contend, the trial court erred in failing to address this particular challenge in the context of its class-certification order. The plaintiffs dispute the fact that any of the current class counsel are necessary witnesses and therefore disqualified, as Caremark and the insurers urge.  They further contend that, even if certain lawyers might ultimately be disqualified, that disqualification would not necessarily affect the ability of the disqualified lawyer's firm or remaining counsel to represent the class.

Clearly, the trial court, in its certification order, made the necessary finding that proposed class counsel were adequate; however, it specifically declined to make a final ruling on the issue whether, despite their adequacy, counsel might be subject to disqualification on the ground that they might also be necessary witnesses at trial. The trial court's rationale was that discovery was not complete and that the issue was, therefore, not ripe for adjudication. We initially question whether, in the absence of an adverse ruling on the record below, Caremark and the insurers have adequately preserved this issue for appellate review; indeed, the record makes it abundantly clear that the trial court specifically reserved its ruling on this issue for future consideration in the event the matter actually proceeds to trial. See, e.g., CSX Transp., Inc. v. Day, 613 So. 2d 883, 884 (Ala. 1993) ("[I]t is familiar law that an adverse ruling below is a prerequisite to appellate review."). Additionally, the testimony of both parties' expert witnesses at the certification hearing indicated that, pursuant to advisory authority issued by the Alabama Bar Association, consideration of disqualification issues during pretrial proceedings is premature. In fact, Caremark and the insurers' own expert,

35

Professor Tom Morgan, although attempting through his testimony to remove this case from within the ambit of that general rule, clearly acknowledged during the certification hearing that the exclusion of a lawyer as a potential witness is evaluated, not during pretrial proceedings, but at the time of trial. In light of that acknowledgment and the failure of Caremark and the insurers to actually cite any authority requiring the trial court's consideration of this issue at the time the class is certified, we find no error in the trial court's reservation of this issue for future consideration.

### C. Past Conduct of Appointed Counsel

Caremark and the insurers next argue that alleged unethical conduct exhibited by class counsel in connection with both the 1998 litigation and the present case precludes their representation of the certified class. Therefore, according to Caremark and the insurers, the trial court erred in concluding that appointed counsel's representation would fairly and adequately protect the interest of the class as required by Rule 23(a)(4).[12] Specifically, in support of this

---

[12]It is undisputed that the challenge of Caremark and the insurers in this regard is not based on the experience, ability, or credentials of class counsel, the high level of which all parties concede.

36

claim, Caremark and the insurers identify the following instances of alleged disqualifying conduct: the alleged failure of class counsel to fulfill their fiduciary duty to class members by ascertaining the fairness of the settlement concluding the 1998 litigation by means of confirmatory discovery; the alleged unethical division of class counsel's fee with their client, Lauriello, in violation of Rule 5.4(a), Ala. R. Prof. Cond.; the alleged unethical division of class counsel's fee with their cocounsel in the 1998 litigation, in violation of Rule 1.5(e), Ala. R. Prof. Cond.; the alleged unethical representation of Lauriello by class counsel in his capacity -- at one time, at least -- as both a named plaintiff and a named defendant in this action, in violation of Rule 1.7(a), Ala. R. Prof. Cond.; and the execution in the present litigation of the lead-counsel agreement between class counsel and counsel for the intervenors.

As Caremark and the insurers note, the trial court's class-certification order reflects that it considered -- and ultimately rejected pursuant to its rigorous analysis[13] -- each

---

[13]Reliable Money Order, Inc. v. McKnight Sales Co., 704 F.3d 489, 498 (7th Cir. 2013) ("So long as the district court employs the 'rigorous analysis' required by Rule 23, it enjoys broad leeway in deciding the adequacy of class counsel. See

of the inadequacy grounds advanced by Caremark and the insurers below. Our review of the transcript of the class-certification hearing reflects that the instances of alleged misconduct were hotly contested, with the plaintiffs providing expert testimony establishing that each of the purported violations was not, as Caremark and the insurers allege, actually unethical when considered in the context in which the conduct occurred.

Moreover, Caremark and the insurers cite no authority demonstrating that any of the alleged instances of misconduct automatically disqualifies class counsel from serving in the present case or renders them, as a matter of law, inadequate. The record further establishes, despite Caremark and the insurers' arguments to the contrary, that there was no <u>evidence</u> before the trial court suggesting the type of egregious self-dealing and/or dishonesty <u>aimed at class members</u>, which appears in the authorities on which Caremark and the insurers rely and which would require a denial of class certification. Compare <u>Creative Montessori Learning</u>

---

<u>Kirkpatrick v. J.C. Bradford & Co.</u>, 827 F.2d 718, 728 (11th Cir. 1987) (noting 'adequacy of class representation is primarily a factual issue').").

Ctrs. v. Ashford Gear LLC, 662 F.3d 913, 917 (7th Cir. 2011) (observing that class counsel's undisputed misconduct in both obtaining material on the basis of a promise of confidentiality while concealing counsel's true intent and falsely implying to a potential named plaintiff that there already was a certified class to which the plaintiff belonged "demonstrated a lack of integrity that casts serious doubt on [counsel's] trustworthiness as representatives of the class" of which they were fiduciaries); In re Mid-Atlantic Toyota Antitrust Litig., 93 F.R.D. 485, 490 (D.C. Md. 1982) (holding that an agreement between named plaintiffs and class counsel was both unethical and prejudicial to unnamed class members in that, to the extent that counsel agreed to bear ultimate responsibility for all costs of litigation, counsel acquired a financial stake in the litigation that was "tantamount to the unacceptable situation of the attorney being a member of the class of litigants while serving as class counsel").  See also Reliable Money Order, Inc. v. McKnight Sales Co., 704 F.3d 489, 498 (7th. Cir. 2013) (noting that "[n]ot any ethical breach justifies the grave option of denying class

certification").[14]  Therefore, we decline to hold that the trial court exceeded its discretion in approving class counsel.

### D.  Alleged Overbreadth of the Certified Class

Finally, Caremark and the insurers contend that the class, as defined in the trial court's class-certification order, is "impermissibly broad."  Caremark and the insurers' brief, at p. 88.  Specifically, according to Caremark and the insurers, the class definition improperly includes stockholders who did not opt into participation in the 1998 litigation and also improperly consolidates the three separate categories of stockholders identified in the 1998 litigation. They further note, however, that, although all three of the class representatives appointed by the trial court did submit a claim in the 1998 litigation, all three were holders of MedPartners common stock, i.e., from a single one of the original three classes included in the 1998 litigation. Therefore, Caremark and the insurers maintain, the appointed

---

[14]Further, although not determinative, we do note the absence of the institution of disciplinary proceedings against class counsel as a result of the alleged misconduct. Additionally, the interests of the class may also be adequately protected by means of the trial court's inherent supervisory role in class-based litigation.

representatives fail to satisfy the adequacy and typicality requirements of Rule 23 in that they have a purported conflict as a result of the difference in their interests from those of other class members. Contrary to this claim, however, the plaintiffs contend, as the trial court concluded in its certification order, that the current fraud claims "are common to each and every class member" and that the previous designation of the various classes of shareholders is irrelevant.

Caremark and the insurers cite authority indicating that the Rule 23(a)(4) requirement of adequate representation is unsatisfied when the interests of the named plaintiffs and the class members conflict. See, e.g., Cutler v. Orkin Exterminating Co., 770 So. 2d 67, 71 (Ala. 2000). However, although Caremark and the insurers attempt to argue that the potential weakness of the underlying security-based claims of certain classes of shareholders may affect the determination of those shareholders' damages in the present fraud case, we fail to see the identified danger. Instead, it appears to this Court that the merits of the underlying claims of each group in the 1998 litigation are largely irrelevant in that the present fraud claims were perpetrated on the group as a

41

whole, irrespective of their original, potentially individual interests. Moreover, as occurred by means of the percentage distribution in the 1998 litigation, we emphasize the trial court's ability to fashion any class-based recovery so as to prevent the excess recovery of any particular group within the class.

We do agree, however, with the contention of Caremark and the insurers that the alleged fraud perpetrated by them in connection with the settlement of the 1998 litigation could not have damaged those shareholders who had previously opted out of participation therein and that their inclusion in the present class would render it impermissibly broad. The trial court's certification order, however, as quoted above, appears to specifically "exclud[e] all [potential class] members who opted out of the 1999 Class Settlement." Thus, because the trial court appears to have, on its own directive, limited the class to actual participants in the prior settlement process, we also fail to perceive the possibility advanced by Caremark and the insurers that "[t]he class, as certified, ... includes individuals who did not submit claims in the 1998 litigation." Caremark and the insurers' brief, at p. 93. We, therefore, conclude that the court did not exceed its discretion as to

42

the designation of the class included in its certification order.

## II.  Case No. 1120114

The plaintiffs' sole contention in their cross-appeal from the trial court's class-certification order is that the trial court exceeded its discretion in also failing to certify the class, as the plaintiffs had requested, pursuant to Rule 23(b)(1), Ala. R. Civ. P.  Although acknowledging, as did the trial court, the contrary and well established legal principles demonstrated by this Court's decision in Funliner of Alabama, L.L.C. v. Pickard, 873 So. 2d 198, 217 (Ala. 2003), in which we clearly indicated that "certification under Rule 23(b)(1) is inappropriate when a plaintiff seeks monetary damages,"[15] the plaintiffs contend that "[Rule 23](b)(1) is a better 'fit' to these unique facts" than is Rule 23(b)(3). Plaintiffs' brief, at p. 65.  More specifically, they argue that the separate legal status afforded the class certified in the 1998 litigation makes a mandatory class certified pursuant

_____

[15]See also Ex parte Government Emps. Ins. Co., 729 So. 2d 299, 306 (Ala. 1999) ("'Class suits seeking damages exclusively are prime candidates for Rule 23(b)(3) classes.'" (quoting 1 H. Newberg & A. Conte, Newberg on Class Actions § 4.08 (3d ed. 1992))).

43

to Rule 23(b)(1) more appropriate than the opt-out class certified by the trial court pursuant to Rule 23(b)(3).[16]

First, we note the plaintiffs' admitted inability to provide authority supporting the requested departure from this Court's established application of either provision of Rule 23(b)(1). Moreover, the plaintiffs similarly fail to demonstrate the potential danger of inconsistent adjudications of class members' rights, which they assert exists. See Ex parte Government Emps. Ins. Co., 729 So. 2d 299, 306-07 (Ala. 1999) ("'"Rule 23(b)(1)(A) class actions involve those classes formed if the prosecution of separate lawsuits would create the risk of inconsistent adjudications."'" (quoting Ex parte Holland, 692 So. 2d 811, 815 (Ala. 1997), quoting in turn Adams v. Robertson, 676 So. 2d 1265, 1269 (Ala. 1995))). Indeed, we see nothing to suggest the existence of such a risk in the present matter. Additionally, there is also nothing suggesting that the present case is a limited-fund case as was true in the 1998 litigation; therefore there is also no

---

[16]In support of their claim, the plaintiffs analogize the present situation to one in which individuals, who are shareholders of the same corporate entity, seek collective redress: "If a corporation has been defrauded, the law does not permit each shareholder to file individual fraud claims." Plaintiffs' brief, at p. 67.

indication -- at least in the arguments before us -- that adjudication of one class member's interest would necessarily either "be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests." Rule 23(b)(1)(B).

## Conclusion

Based on the foregoing, we conclude that the trial court properly certified the plaintiffs' claims for class treatment; that judgment is, therefore, due to be affirmed in all respects.

1120010 -- AFFIRMED.

Moore, C.J., and Stuart, Parker, Murdock, Main, Wise, and Bryan, JJ., concur.

1120114 -- AFFIRMED.

Moore, C.J., and Stuart, Parker, Main, Wise, and Bryan, JJ., concur.

Murdock, J., dissents.

1120010; 1120114

MURDOCK, Justice (dissenting in case no. 1120114).

I disagree with the holding in the cross-appeal to the effect that certification of the class as an "opt-out" class under Rule 23(b)(3), Ala. R. Civ. P., is appropriate. We hold in the appeal (case no. 1120010) that individual-reliance issues are not material (thus justifying class certification at all) because it was "the class" that was defrauded. That is, the same misrepresentation was received and relied upon by the same persons on behalf of all the members of the class.

By the same token, certification under Rule 23(b)(3) is inappropriate. The claims of the class members in this unusual case do not vary, and we therefore should not make possible a multitude of individual lawsuits that all seek to vindicate the same wrong with the same injury (proportionally) to each class member. Such a certification would allow inconsistent outcomes, even as to the most basic question of liability. The risk of such inconsistency is a key reason for certifying a "non-opt-out" class under Rule 23(b)(1), Ala. R. Civ. P. See, e.g., Ex parte Government Emps. Ins. Co., 729 So. 2d 299, 306 (Ala. 1999) (observing that "'"Rule 23(b)(1)(A) class actions involve those classes formed if the prosecution of separate lawsuits would create the risk of

46

inconsistent adjudications"'" (quoting Ex parte Holland, 692 So. 2d 811, 815 (Ala. 1997), quoting in turn Adams v. Robertson, 676 So. 2d 1265, 1269 (Ala. 1995))).

The trial court expressly stated that it felt obligated in its role as a lower court to follow precedent from this Court preferring Rule 23(b)(3) "opt-out" certification where money damages are involved but that it questioned whether this was the correct approach in this unusual case. With regard to our precedent, I note that this Court has not instituted a blanket prohibition on class certification under Rule 23(b)(1) where monetary relief is sought by the class in question. In Ryan v. Patterson, 23 So. 3d 12, 20 (Ala. 2009), we noted:

> "'[C]lose scrutiny is necessary if money damages are to be included in any mandatory class in order to protect the individual interests at stake ....' Coleman v. General Motors Acceptance Corp., 296 F.3d 443, 448 (6th Cir. 2002). This Court has observed that '[a]s a general rule, certification of a class pursuant to Rule 23(b)(2) is improper if the primary relief sought is money damages,' Compass Bank v. Snow, 823 So. 2d 667, 678 (Ala. 2001); it is also true that 'the fact that a Rule 23(b)(1) or (b)(2) suit may ultimately result in a monetary recovery from a defendant does not prevent certification under those subdivisions.' First Alabama Bank of Montgomery, N.A. v. Martin, 425 So. 2d 415, 423 (Ala. 1982)."

Both the trial court and the main opinion agree that the situation presented in this case is a novel one. Given the

47

1120010; 1120114

nature and uniqueness of the claims presented, an exception to our general policy of not permitting class certification under Rule 23(b)(1) for actions seeking monetary relief is both prudent and permissible. In short, this is a novel case not governed by any indistinguishable precedent to the contrary; it therefore stands to reason that we can, indeed must, simply apply the language and policy underlying Rule 23 to decide this novel case. Doing so would require a reversal of the decision of the trial court in the cross-appeal.